# IN THE UNITED STATES DISTRICT COURT EASTERN DISTRICT OF TENNESSEE GREENEVILLE DIVISION

| | |
|---|---|
| CARLIE STODDARD, as surviving spouse and next of kin of MATHEW STODDARD, deceased, on behalf of all wrongful death beneficiaries, | ) ) ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO: |
| | ) |
| | ) _____ |
| SULLIVAN COUNTY, TENNESSEE; | ) |
| SHERIFF JEFFREY CASSIDY, in his | ) |
| Individual and Official capacity; | ) |
| TREVOR GILLIAM, in his individual capacity; | ) |
| BRYAN SALYER, in his individual capacity; | ) |
| SHANE AMYX, in his individual capacity; | ) |
| CODY CUNNINGHAM, in his individual capacity; | ) |
| JAMES KING III, in his individual capacity; | ) |
| CHRIS GOOD, in his individual capacity; | ) |
| BRYCEN BLEVINS, in his individual capacity; | ) |
| EVAN WADE, in his individual capacity | ) |
| BRANDON HARER, in his individual capacity and; | ) ) |
| ROBERT BOWLIN, in his individual capacity. | ) |
| | ) |
| Defendants. | ) Jury Trial Demanded |

## COMPLAINT FOR DAMAGES

COMES NOW PLAINTIFF CARLIE STODDARD, as surviving spouse and next of kin of her deceased husband, MATHEW STODDARD, and hereby files this Complaint for Damages against the above-named Defendants on behalf of all wrongful-death beneficiaries, respectfully showing the Court as follows:

Page **1** of **174**

## Introduction & Overview

### 1.

This Complaint encompasses multiple Constitutional Violations at different locations and at different points in time.

### 2.

The first incident subject to this Complaint is continuing in nature and involves the excessive tightening, tugging, and jerking of Mr. Stoddard's handcuffs and ankle shackles which caused Mr. Stoddard to suffer from open wounds at the cites of his upper and lower extremities.

### 3.

The second incident subject to this Complaint was the psychological torture and "freezing out" of Mr. Stoddard while he was in the back of the patrol car en route to the jail.

### 4.

The third incident subject to this Complaint occurred at the jail where multiple Sullivan County officers punched, kicked, struck, tased and otherwise beat up Mr. Stoddard while he was handcuffed, held down, shackled, and in a restraint chair.

### 5.

The fourth and final incident subject to this Complaint ultimately caused Mr. Stoddard's death and it occurred when Defendant Robert Bowlin placed tremendous pressure on Mr. Stoddard's upper back and neck causing Mr. Stoddard an anoxic brain injury in the setting of a police restraint.

6.

This is a civil action pursuant to 42 U.S.C. § 1983 to redress deprivations under color of law depriving Mathew Stoddard of his clearly established civil rights secured by the Fourth and Fourteenth Amendments to the United States Constitution, arising from the incidents described in this Complaint.

7.

As a result of the above constitutional deprivations, Mr. Stoddard was needlessly and wrongfully severely injured and killed.

8.

Claims are hereby filed pursuant to 42 U.S.C. § 1983 for civil rights violations, unreasonable use of force, supervisory liability, *Monell* and *Canton* Claims, and substantive due process violations.

9.

Plaintiff also raises pendant state law claims of assault and battery, intentional infliction of emotional distress, and County derivative liability pursuant to T. C. A. § 8-8-302.

10.

Plaintiff seeks compensatory damages, punitive damages, an award of costs, interest, and attorney's fees, and such other further relief as is available and this Court and the jury deem just and proper.

## Parties, Jurisdiction & Venue

11.

Plaintiff Carlie Stoddard was married to Mr. Stoddard at the time of Mr. Stoddard's death. Plaintiff is a citizen of the state of Tennessee.

12.

All of the Defendants receive some form of federal funding.

13.

Defendant Sullivan County, Tennessee, (hereinafter referred to as "Sullivan County") a governmental entity, is and was at all times relevant herein the duly organized governing entity of Sullivan County, Tennessee, created and existing by virtue of the laws of the State of Tennessee, an entity subject to suit, and subject to the jurisdiction of this Court. The County is sued herein for its constitutional policies, customs, and training which proximately caused Mr. Stoddard's injuries and death.

14.

Sullivan County is also liable pursuant to T. C. A. § 8-8-302 for tortious acts and omissions under color of state law of Trevor Gilliam, Bryan Salyer, Shane

Amyx, Cody Cunningham, James King III, Brandon Harer, Chris Good, Brycen Blevin, Evan Wade, and Robert Bowlin, which proximately caused Mr. Stoddard pain and suffering, general and special damages, and wrongful death.

15.

At all times material herein, Sullivan County possessed the power and authority to adopt policies and prescribe rules, regulations, and practices affecting all facets of the training, supervision, control, employment, assignment and removal of individual members of the SCSO, including those individuals charged with protecting and serving the public as Sheriff's Deputies, and to assure that said actions, policies, rules, regulations, practices, and procedure of the SCSO and its employees and agents comply with the laws and constitutions of the United States and the State of Tennessee.

16.

The County's policies, practices, and customs, through its Sheriff's Office, were a moving force in the constitutional violations described in this Complaint. Defendant Sullivan County, Tennessee, is subject to the jurisdiction of this Court and may be served with process by request for waiver of service by delivering a copy of the summons and of the complaint to the chief executive officer of the county, County Mayor Richard S. Venerable, at the Sullivan County Courthouse, 3411 Hwy. 126, Suite 206, Blountville, TN 37617, or if absent from the county, to the county

attorney if there is one designated; if not, by delivering the copies to the county court clerk.

17.

Defendant Sheriff Jeffrey Cassidy (hereinafter referred to as "Defendant Cassidy") was the elected Sheriff of Sullivan County, Tennessee. He was responsible for setting the policy that his officers were expected to follow and for making sure that said policy was followed. Sheriff Cassidy was also responsible for the hiring, training, discipline and supervision of the employees of the Sullivan County Sheriff's Office. Said Defendant held office by virtue of the Constitution and laws of the State of Tennessee, and was acting in the course and scope of his employment and under the color of law at all times relevant and is sued herein in his individual capacity for purposes of his supervisory conduct over the policies and training and supervision of law enforcement personnel under his control and supervision.

18.

Defendant Cassidy is subject to the jurisdiction of this Court and may be served with process by request for waiver of service by First Class Mail sent to his attention at his place of work at the Sullivan County Sheriff's Office, 140 Blountville Bypass, Blountville, TN 37617. Otherwise, Sheriff Cassidy is a resident of and domiciled in Tennessee, and may be personally served at his residence or wherever he may be found.

19.

Trevor Gilliam (hereinafter referred to as "Defendant Gilliam") was employed by the Sullivan County Sheriff's Office and was acting in the course and scope of his employment and under the color of law at all times relevant and is sued herein in his individual capacity for purposes of his actions and inactions as described below.

20.

Defendant Gilliam, was, at all times relevant herein, a Sullivan County law enforcement officer employed by the Sullivan County Sheriff's Office and acting in that capacity at all times relevant herein. Defendant Gilliam acted within the scope of his employment which was governed by the policies and procedures of the Sullivan County Sheriff's Office.

21.

Defendant Gilliam is subject to the jurisdiction of this Court and may be served with process by request for waiver of service by First Class mail sent to his attention at his place of work at the Sullivan County Sheriff's Office, 140 Blountville Bypass, Blountville, TN 37617. Otherwise, Defendant Gilliam is a resident of and domiciled in Sullivan County, Tennessee, and may be personally served at his residence or wherever he may be found.

22.

Bryan Salyer (hereinafter referred to as "Defendant Salyer") was employed by Sullivan County Sheriff's Office and was acting in the course and scope of his employment and under the color of law at all times relevant and is sued herein in his individual capacity for purposes of his actions and inactions as described below.

23.

Defendant Salyer was, at all times relevant herein, a Sullivan County law enforcement officer employed by the Sullivan County Sheriff's Office and acting in that capacity at all times relevant herein. Defendant Salyer acted within the scope of his employment which was governed by the policies and procedures of the Sullivan County Sheriff's Office.

24.

Defendant Salyer is subject to the jurisdiction of this Court and may be served with process by request for waiver of service by First Class mail sent to his attention at his place of work at the Sullivan County Sheriff's Office, 140 Blountville Bypass, Blountville, TN 37617. Otherwise, Defendant Salyer is a resident of and domiciled in Sullivan County, Tennessee, and may be personally served at his residence or wherever he may be found.

25.

Shane Amyx (hereinafter referred to as "Defendant Amyx") was employed by

Sullivan County Sheriff's Office and was acting in the course and scope of his employment and under the color of law at all times relevant and is sued herein in his individual capacity for purposes of his actions and inactions as described below.

26.

Defendant Amyx was, at all times relevant herein, a Sullivan County law enforcement officer employed by the Sullivan County Sheriff's Office and acting in that capacity at all times relevant herein. Defendant Amyx acted within the scope of his employment which was governed by the policies and procedures of the Sullivan County Sheriff's Office.

27.

Defendant Amyx is subject to the jurisdiction of this Court and may be served with process by request for waiver of service by First Class mail sent to his attention at his place of work at the Sullivan County Sheriff's Office, 140 Blountville Bypass, Blountville, TN 37617. Otherwise, Defendant Amyx is a resident of and domiciled in Sullivan County, Tennessee, and may be personally served at his residence or wherever he may be found.

28.

Cody Cunningham (hereinafter referred to as "Defendant Cunningham") was employed by Sullivan County Sheriff's Office and was acting in the course and scope of his employment and under the color of law at all times relevant and is sued herein in

his individual capacity for purposes of his actions and inactions as described below.

29.

Defendant Cunningham was, at all times relevant herein, a Sullivan County law enforcement officer employed by the Sullivan County Sheriff's Office and acting in that capacity at all times relevant herein. Defendant Cunningham acted within the scope of his employment which was governed by the policies and procedures of the Sullivan County Sheriff's Office.

30.

Defendant Cunningham is subject to the jurisdiction of this Court and may be served with process by request for waiver of service by First Class mail sent to his attention at his place of work at the Sullivan County Sheriff's Office, 140 Blountville Bypass, Blountville, TN 37617. Otherwise, Defendant Cunningham is a resident of and domiciled in Sullivan County, Tennessee, and may be personally served at his residence or wherever he may be found.

31.

James King III (hereinafter referred to as "Defendant King") was employed by Sullivan County Sheriff's Office and was acting in the course and scope of his employment and under the color of law at all times relevant and is sued herein in his individual capacity for purposes of his actions and inactions as described below.

32.

Defendant King was, at all times relevant herein, a Sullivan County law

enforcement officer employed by the Sullivan County Sheriff's Office and acting in that capacity at all times relevant herein. Defendant King acted within the scope of his employment which was governed by the policies and procedures of the Sullivan County Sheriff's Office.

33.

Defendant King is subject to the jurisdiction of this Court and may be served with process by request for waiver of service by First Class mail sent to his attention at his place of work at the Sullivan County Sheriff's Office, 140 Blountville Bypass, Blountville, TN 37617. Otherwise, Defendant King is a resident of and domiciled in Sullivan County, Tennessee, and may be personally served at his residence or wherever he may be found.

34.

Chris Good (hereinafter referred to as "Defendant Good") was employed by Sullivan County Sheriff's Office and was acting in the course and scope of his employment and under the color of law at all times relevant and is sued herein in his individual capacity for purposes of his actions and inactions as described below.

35.

Defendant Good was, at all times relevant herein, a Sullivan County law enforcement officer employed by the Sullivan County Sheriff's Office and acting in that capacity at all times relevant herein. Defendant Good acted within the scope of his employment which was governed by the policies and procedures of the Sullivan

County Sheriff's Office.

<div align="center">36.</div>

Defendant Good is subject to the jurisdiction of this Court and may be served with process by request for waiver of service by First Class mail sent to his attention at his place of work at the Sullivan County Sheriff's Office, 140 Blountville Bypass, Blountville, TN 37617. Otherwise, Defendant Good is a resident of and domiciled in Sullivan County, Tennessee, and may be personally served at his residence or wherever he may be found.

<div align="center">37.</div>

Brycen Blevins (hereinafter referred to as "Defendant Blevins") was employed by Sullivan County Sheriff's Office and was acting in the course and scope of his employment and under the color of law at all times relevant and is sued herein in his individual capacity for purposes of his actions and inactions as described below.

<div align="center">38.</div>

Defendant Blevins was, at all times relevant herein, a Sullivan County law enforcement officer employed by the Sullivan County Sheriff's Office and acting in that capacity at all times relevant herein. Defendant Blevins acted within the scope of his employment which was governed by the policies and procedures of the Sullivan County Sheriff's Office.

<div align="center">39.</div>

Defendant Blevins is subject to the jurisdiction of this Court and may be served

with process by request for waiver of service by First Class mail sent to his attention at his place of work at the Sullivan County Sheriff's Office, 140 Blountville Bypass, Blountville, TN 37617. Otherwise, Defendant Blevins is a resident of and domiciled in Sullivan County, Tennessee, and may be personally served at his residence or wherever he may be found.

40.

Evan Wade (hereinafter referred to as "Defendant Wade") was employed by Sullivan County Sheriff's Office and was acting in the course and scope of his employment and under the color of law at all times relevant and is sued herein in his individual capacity for purposes of his actions and inactions as described below.

41.

Defendant Wade was, at all times relevant herein, a Sullivan County law enforcement officer employed by the Sullivan County Sheriff's Office and acting in that capacity at all times relevant herein. Defendant Wade acted within the scope of his employment which was governed by the policies and procedures of the Sullivan County Sheriff's Office.

42.

Defendant Wade is subject to the jurisdiction of this Court and may be served with process by request for waiver of service by First Class mail sent to his attention at his place of work at the Sullivan County Sheriff's Office, 140 Blountville Bypass, Blountville, TN 37617. Otherwise, Defendant Wade is a resident of and domiciled in

Sullivan County, Tennessee, and may be personally served at his residence or wherever he may be found.

43.

Brandon Harer (hereinafter referred to as "Defendant Harer") was employed by Sullivan County Sheriff's Office and was acting in the course and scope of his employment and under the color of law at all times relevant and is sued herein in his individual capacity for purposes of his actions and inactions as described below.

44.

Defendant Harer was, at all times relevant herein, a Sullivan County law enforcement officer employed by the Sullivan County Sheriff's Office and acting in that capacity at all times relevant herein. Defendant Harer acted within the scope of his employment which was governed by the policies and procedures of the Sullivan County Sheriff's Office.

45.

Defendant Harer is subject to the jurisdiction of this Court and may be served with process by request for waiver of service by First Class mail sent to his attention at his place of work at the Sullivan County Sheriff's Office, 140 Blountville Bypass, Blountville, TN 37617.  Otherwise, Defendant Harer is a resident of and domiciled in Sullivan County, Tennessee, and may be personally served at his residence or wherever he may be found.

46.

Robert Bowlin (hereinafter referred to as "Defendant Bowlin") was employed by Sullivan County Sheriff's Office and was acting in the course and scope of his employment and under the color of law at all times relevant and is sued herein in his individual capacity for purposes of his actions and inactions as described below.

47.

Defendant Bowlin was, at all times relevant herein, a Sullivan County law enforcement officer employed by the Sullivan County Sheriff's Office and acting in that capacity at all times relevant herein. Defendant Bowlin acted within the scope of his employment which was governed by the policies and procedures of the Sullivan County Sheriff's Office.

48.

Defendant Bowlin is subject to the jurisdiction of this Court and may be served with process by request for waiver of service by First Class mail sent to his attention at his place of work at the Sullivan County Sheriff's Office, 140 Blountville Bypass, Blountville, TN 37617. Otherwise, Defendant Bowlin is a resident of and domiciled in Sullivan County, Tennessee, and may be personally served at his residence or wherever he may be found.

49.

This Court has original subject matter jurisdiction of the federal questions presented herein pursuant to 28 U.S.C. §§ 1331 and 1343. This Court also has jurisdiction pursuant to the provisions of 42 U.S.C. § 1983 and 42 U.S.C. § 1988,

Page **15** of

the Fourth and Fourteenth Amendment, and by the laws of the State of Tennessee, pursuant to 28 U.S.C. § 1367(a), because the state and federal claims "derive from a common nucleus of operative fact." United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966).

50.

Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because all incidents and or occurrences giving rise to this action occurred in this District, some or all of the Defendants reside in this judicial district, and the events or omissions giving rise to these claims arose here in Bristol, Sullivan County, Tennessee, which is situated within the District and Divisional boundaries of the Greeneville Division of the Eastern District of Tennessee.

51.

Defendants violated the rights of Mr. Stoddard under the United States Constitution and the laws of the State of Tennessee by using unreasonable force to injure and wrongfully kill Mr. Stoddard, among other things.

52.

Defendants' conduct under color of state law proximately caused the deprivation of Mr. Stoddard's federally protected rights. At all times mentioned in this Complaint, the Defendants acted jointly and in concert with each other. Each Defendant failed and refused to perform their duty, thereby proximately causing the injuries herein complained of.

Page **16** of

53.

Jurisdiction supporting a claim for attorney fees and costs is conferred by 42 U.S.C. §§ 1983, 1988, and the Fourth Amendment and Fourteenth Amendment to the United States Constitution, and relevant Tennessee law.

54.

This action has been brought within one year of the subject incidents.

**Initial Encounter and Jail Facts**

55.

On May 21, 2023, the Stoddard Family, which included Mr. Stoddard, Mrs. Stoddard, and their children, were driving from Chattanooga, TN to Dayton, Ohio, and got lost in Sullivan County, Tennessee.

56.

Because the Stoddard's had become lost and their children needed to use the restroom, Mr. Stoddard pulled into a neighborhood and asked for directions.

57.

Mr. Stoddard pulled over at a woman named Barb's house and received directions.

58.

Soon thereafter, the Stoddard's became lost again and pulled over at the

residence of Britt Hensley.

59.

At Britt Hensley's residence, Mr. Stoddard knocked on the door and when there was no answer, he and his family entered the home.

60.

Thereafter, Britt Hensley, the homeowner, (hereinafter referred to as "Ms. Hensley") went in and noticed Mr. Stoddard, Mrs. Stoddard, and their three children sitting on the couch in the residence.

61.

Ms. Hensley asked the Stoddard's why they were in her residence. In response, the Stoddard's stated that they had been driving from Chattanooga, TN to Dayton, Ohio, and got lost.

62.

The Stoddard's also told Ms. Hensley that they needed to take a break driving, to get new directions to Dayton Ohio, and to let the kids out to use the restroom.

63.

The Stoddard's told Ms. Hensley that they knocked on the front door to the residence and that Mr. Stoddard opened the door to the residence and told his wife and kids to get in the house so they could use the restroom.

64.

Upon the arrival of the homeowner's husband, James Hensley, he attempted to have a conversation with Mr. Stoddard, but Mr. Stoddard was not making sense.

65.

Ms. Hensley then called the police. In the background of the call, the unidentified children can be heard speaking with individuals in the home and apologizing.

66.

Ms. Hensley appeared confused about the situation and explained that the family had arrived in a newer model vehicle. She notified dispatch that they did not seem to be under the influence of any drugs.

67.

Defendant Gilliam and Defendant Salyer responded to the call, and upon arrival, Defendant Gilliam made contact with Ms. Hensley.

68.

Upon information and belief, Defendant Gilliam and Defendant Sayler had a background check run on Mr. Stoddard at some point after arriving on the scene and learned that he did not have a criminal history on file.

69.

Page **19** of

Ms. Hensley told Defendant Gilliam that she and her kids just got back from a walk and noticed a Gray dodge SUV in their driveway that they had never seen before.

70.

Ms. Hensley also told Defendant Gilliam that Mr. Stoddard was on the front porch talking with Ms. Hensley's husband, James Hensley, and that Mr. Stoddard was not making any sense while talking.

71.

Defendant Gilliam then made contact with Mr. Stoddard.

72.

Defendant Gilliam and Defendant Salyer tried to detain Mr. Stoddard.

73.

While trying to handcuff Mr. Stoddard, Defendant Salyer and Defendant Gilliam placed Mr. Stoddard's handcuffs on too tightly. This resulted in open wounds forming on Mr. Stoddard's wrists.

74.

While in custody, Mr. Stoddard was screaming and in pain, and open wounds started to form at the site of Mr. Stoddard's wrists.

75.

In spite of this, Defendant Gilliam and Defendant Salyer refused to loosen Mr. Stoddard's handcuffs.

76.

Defendant Gilliam then placed Mr. Stoddard in his cruiser and spoke with Mrs. Stoddard about the incident.

77.

Mrs. Stoddard informed Defendant Gilliam that Mr. Stoddard had been acting strange for the past couple of days and that on that day Mr. Stoddard told Mrs. Stoddard to leave all the phones behind at their residence as they were going to Dayton, Ohio.

78.

Mrs. Stoddard also informed Defendant Gilliam that the family drove for about 2 hours and then stopped at a lady named Barb's house for directions.

79.

At Barb's house, Barb pointed over the hill and the Stoddard's drove and stopped at Ms. Hensley's house.

80.

Defendant Gilliam then decided to place Mr. Stoddard under arrest for TCA: 39-16-602 Resist Stop/Arrest and TCA 39-14-406 Aggravated Criminal Trespass.

These charges were later dropped.

81.

Over the next 2 hours, while Mr. Stoddard was in custody, he was subjected to a series of verbal taunts, psychological abuse, physical restraint, and excessive force by multiple deputies, including Defendant Gilliam, Defendant Saylor, Defendant Harer, Defendant Amyx, Defendant Cunningham, Defendant King, Defendant Good, Defendant Blevins, and Defendant Wade.

82.

During the transport of Mr. Stoddard, Defendant Gilliam's in-vehicle camera was deliberately turned away to avoid recording Mr. Stoddard.

83.

At around 20:57 p.m., Deputy Gilliam and Deputy Salyer departed the scene and began driving toward the Sullivan County Jail.

84.

On May 21, 2024 at around 21:14 p.m., during Mr. Stoddard's transport to the jail, the following exchange occurred between Defendant Gilliam and Mr. Stoddard:

Mr. Stoddard: *"I've done it, I've failed drug tests. I've failed miserably but yet I've still succeeded, Why? Love is the lie. My dad loved me.*

Officer: *"No he didn't."*

Page **22** of

Mr. Stoddard: *"My grandpa loved me"*

Officer: *"Did they? Do your kids love you?"*

Mr. Stoddard: *"Yes, you know they do cause you talk to them."*

Officer: *"I didn't talk to shit man."*

Mr. Stoddard: *"I don't give a shit what you did I know you did. I don't have to. You did. I don't care anymore. I don't want this, I don't want anything. I got what I got done, and that's all that matters.*

85.

On May 21, 2024 at around 21:14 p.m., Defendant Gilliam stopped and with the help of other deputies, including Defendant Wade and Defendant Harer, took Mr. Stoddard out of the vehicle and put shackles restraints on him. These shackle restraints were placed very tightly on Mr. Stoddard and caused open wounds to Mr. Stoddard's ankles/legs.

86.

While in custody, Mr. Stoddard was screaming and in pain, and open wounds started to form at the site of Mr. Stoddard's wrists and ankles.

87.

In spite of this, Defendant Gilliam, Defendant Harer, and Defendant Wade refused to loosen Mr. Stoddard's handcuffs and shackles.

88.

On May 21, 2024 at around 21:19 p.m., during Mr. Stoddard's transport to the

jail, the following exchange occurred between Defendant Gilliam and Mr. Stoddard:

Mr. Stoddard: *"Put me away. They don't deserve me."*

Officer: *"That's true."*

Mr. Stoddard: *"It's ok, you guys know too, take me away, its safe."*

Officer: *"Why are you pouring sweat?"*

Mr. Stoddard: *"Because there are toxins getting out of me. I'm still not ready. I gotta go detox. I need to go jail. Take me to jail.*

Officer: *"We are if you stop acting crazier than shit."*

Mr. Stoddard: *"That's where I needed to be. Save me please."*

Officer: *"We are. Youre going to jail. That way your family is safe and they don't have you."*

Mr. Stoddard: *"Do you promise?"*

Officer: *"Yeah yeah yeah. Now they don't have a dad anywhere, so that's fantastic you fucked that up for them."*

Mr. Stoddard: *"Yeah I know I did I fucked up everything"*

Officer: *"You suck ass."*

Mr. Stoddard: *"Look me in the eyes. Tell me they are safe. That's all I care*

*about. Look me in the eyes. Are they safe!?"*

Officer: *"They are safe."*

Mr. Stoddard: *"Thank you."*

Officer: *"You're a bitch."*

Mr. Stoddard: *"So are you, but they are safe. They aren't my shackles. They are safe. They are safe. These aren't my shackles. I'm sorry. I love you. Protect those that don't. Save the chosen, the few, the misfits, the thrown away, the broken, save them please. Like you did my kids, and my wife.*

Officer: *"I'm gonna freeze you out."* **Officer rolls windows down and accelerates to 96mph. Mr. Stoddard becomes silent.**

Officer: *"Matt? Matthew?*

Mr. Stoddard: *"Yes sir."*

Officer: *"The kids are upset…"*

Mr. Stoddard: *"They are safe. They are free"*

Officer: *"No they're not! They don't got teeth."*

Mr. Stoddard: *"They are free from me. They are free. They are free without me. I was holding them back, no Carlie, me. I was the problem, not them, me. I a Always wanted to say they were but they were not. They were the answer.*

During Mr. Stoddard's transport to the jail, Defendant Gilliam intentionally "freezed out" Mr. Stoddard for the sole purpose of torturing and inflicting pain onto Mr. Stoddard.

90.

During the "freeze out", Defendant Gilliam rolled down the car's windows, and Defendant Gilliams's vehicle reached a peak of 96 mph. The "freeze out" lasted at least three minutes.

91.

Defendant Gilliam arrived at the Jail around 9:30 P.M along with other deputies.

92.

Upon arrival, four deputies, surround the vehicle where Mr. Stoddard is being kept.

93.

Other deputies join in at the jail and participate in restraining and assaulting Mr. Stoddard. The deputies who participated in restraining and assaulting Mr. Stoddard include, Defendant Gilliam, Defendant Amyx, Defendant Harer, Defendant King, Defendant Cunningham, Defendant Good, Defendant Blevins, and Defendant Salyer. ("Assaulting Deputies")

94.

On May 21,2024, at around 21:32:50 p.m. one of the  can be seen on video grabbing Mr. Stoddard's right arm as he exited the vehicle.

95.

During that time, as Mr. Stoddard was being escorted toward the door, he moved to his left around one of the Assaulting Deputies, and said Assaulting Deputy can be seen on video placing his hand on Mr. Stoddard's chest which redirected Mr. Stoddard to the right,

96.

As Mr. Stoddard tried to walk around one of the Assaulting Deputies towards the jail door, that Assaulting Deputy can be seen on video grabbing Mr. Stoddard's neck and his left arm, as he and another Assaulting Deputy force Mr. Stoddard to the ground.

97.

At around 21:33:04 p.m., one of the Assaulting Deputies can be seen on video grabbing the chain between Mr. Stoddard's feet and then grabbing Mr. Stoddard's feet, holding his feet in the air preventing Mr. Stoddard from rolling over from his stomach.

98.

At around 21:33:04 p.m., four of the Assaulting Deputies can be seen on video rolling Mr. Stoddard over to a seated position when another Assaulting Deputy arrived in an unmarked car.

99.

During that time, one of the Assaulting Deputies can be seen on video then holding Mr. Stoddard's legs up by the shackle chain between his legs, while another one of the Assaulting Deputies can be seen on video stepping on the chain between his hands with his knee pressed in Mr. Stoddard's back. Mr. Stoddard had severe wounds to his wrists and ankles days after the deputies shackled him

100.

At the jail, Defendant Gilliam called for jail officials to bring out a restraint chair.

101.

The Assaulting Deputies can be seen on video then attempting to hold Mr. Stoddard by his limbs and a restraint chair was brought out.

102.

At around 21:34:45 p.m. two staff members push a restraint chair to the front of the building.

103.

Thereafter, five of the Assaulting Deputies can be seen on video grabbing Mr. Stoddard and moving him onto the restraint chair. Two additional Assaulting Deputies can be seen on video joining the efforts.

104.

At around 21:34:52 p.m., while Mr. Stoddard was handcuffed, shackled, and in a restraint chair, one of the Assaulting Deputies can be seen on video wrapping his arm around Mr. Stoddard's head.

105.

At around 21:35:00 p.m., while Mr. Stoddard was handcuffed, shackled, and in a restraint chair, one of the Assaulting Deputies can be seen on video kicking Mr. Stoddard with his knee.

106.

At around 21:35:07 p.m. while Mr. Stoddard was handcuffed, shackled, and in a restraint chair, one of the Assaulting Deputies can be seen on video kicking Mr. Stoddard with his knee,

107.

At around 21:35:09 p.m., while Mr. Stoddard was handcuffed, shackled, and in a restraint chair, one of the Assaulting Deputies can be seen on video kicking Mr. Stoddard with his knee.

108.

At around 21:35:29 p.m., while Mr. Stoddard was handcuffed, shackled, and in a restraint chair, one of the Assaulting Deputies can be seen on video kicking Mr. Stoddard with his knee.

109.

At around 21:35:34 p.m., while Mr. Stoddard was handcuffed, shackled, and in a restraint chair, one of the Assaulting Deputies can be seen on video kicking Mr. Stoddard with his knee.

110.

At around 21:35:35 p.m. while Mr. Stoddard was handcuffed, shackled, and in a restraint chair, one of the Assaulting Deputies can be seen on video kicking Mr. Stoddard with his knee

111.

At around 21:36 p.m., while at least 5 one of the Assaulting Deputies have Mr. Stoddard restrained in a chair, one of the Assaulting Deputies can be seen on video throwing five heavy closed fist strikes toward Mr. Stoddard's head.

112.

After a brief pause, the Assaulting Deputy can be seen on video throwing two more heavy closed fist strikes at the retrained Mr. Stoddard.

113.

At around 21:35:18 p.m., one of the Assaulting Deputies can be seen on video stepping on and holding down the chain between Mr. Stoddard's feet.

114.

During this time one of the Assaulting Deputies can be seen on video having Mr. Stoddard in a full headlock with his arm wrapped around and or over Mr. Stoddard's mouth.

115.

At around 21:36:04 p.m., while Mr. Stoddard was handcuffed, shackled, and in a restraint chair, one of the Assaulting Deputies can be seen on video punching Mr. Stoddard while stepping on and holding down the chain between Mr. Stoddard's feet.

116.

At around 21:36:04 p.m., while Mr. Stoddard was handcuffed, shackled, and in a restraint chair, one of the Assaulting Deputies can be seen on video punching Mr. Stoddard again while stepping on and holding down the chain between Mr. Stoddard's feet.

117.

At around 21:36:10 p.m., while Mr. Stoddard was handcuffed, shackled, and in

a restraint chair, one of the Assaulting Deputies can be seen on video punching Mr. Stoddard again while stepping on and holding down the chain between Mr. Stoddard's feet.

118.

At around 21:36:10 p.m., while Mr. Stoddard was handcuffed, shackled, and in a restraint chair, one of the Assaulting Deputies can be seen on video punching Mr. Stoddard again while stepping on and holding down the chain between Mr. Stoddard's feet.

119.

At around 21:36:11 p.m., while Mr. Stoddard was handcuffed, shackled, and in a restraint chair, one of the Assaulting Deputies can be seen on video punching Mr. Stoddard again while stepping on and holding down the chain between Mr. Stoddard's feet.

120.

At around 21:36:12 p.m., while Mr. Stoddard was handcuffed, shackled, and in a restraint chair, one of the Assaulting Deputies can be seen on video punching Mr. Stoddard again while stepping on and holding down the chain between Mr. Stoddard's feet.

121.

At around 21:36:54 p.m., while Mr. Stoddard was handcuffed, shackled, and in a restraint chair, one of the Assaulting Deputies can be seen on video punching Mr. Stoddard again while stepping on and holding down the chain between Mr. Stoddard's feet.

122.

Furthermore, while Mr. Stoddard was handcuffed, shackled, and in a restraint chair, Defendant Amyx delivered knee strikes to Stoddard's thigh and multiple other of the Assaulting Deputies kicked and struck Mr. Stoddard.

123.

Furthermore, while Mr. Stoddard was handcuffed, shackled, and in a restraint chair, Deputy Amyx struck Mr. Stoddard in his abdomen.

124.

While officers were placing Mr. Stoddard in the restrain chair, Defendant Amyx delivered several elbow strikes to Mr. Stoddard.

125.

Furthermore, while Mr. Stoddard was handcuffed, shackled, and in a restraint chair, Defendant Harer kneed Mr. Stoddard.

126.

Furthermore, while Mr. Stoddard was handcuffed, shackled, and in a restraint

chair, Defendant Cunnigham delivered knee strikes to Mr. Stoddard.

127.

Furthermore, while Mr. Stoddard was handcuffed, shackled, and in a restraint chair, Defendant King and Defendant Good used joint pressure points, joint manipulation, soft tissue strikes, and brute force on him.

128.

Defendant Gilliam, while in front Mr. Stoddard, and while Mr. Stoddard was handcuffed, shackled, and otherwise restrained, struck Mr. Stoddard several times in the chest and stomach.

129.

While handcuffed, shackled, and in a restraint chair, the Assaulting Deputies delivered punched and kicked Mr. Stoddard in the legs, arms and abdominal area.

130.

Defendant King also tased Mr. Stoddard while he was handcuffed, shackled, and in a restraint chair.

131.

Defendant Gilliam struck, punched, kicked, and otherwise physically assaulted Mr. Stoddard while Mr. Stoddard was handcuffed, shackled, and restrained by multiple officers as well as a restraint chair.

132.

Defendant Amyx struck, punched, kicked, and otherwise physically assaulted Mr. Stoddard while Mr. Stoddard was handcuffed, shackled, and restrained by multiple officers as well as a restraint chair.

133.

Defendant Harer struck, punched, kicked, and otherwise physically assaulted Mr. Stoddard while Mr. Stoddard was handcuffed, shackled, and restrained by multiple officers as well as a restraint chair.

134.

Defendant King struck, punched, kicked, and otherwise physically assaulted Mr. Stoddard while Mr. Stoddard was handcuffed, shackled, and restrained by multiple officers as well as a restraint chair.

135.

Defendant Cunningham struck, punched, kicked, and otherwise physically assaulted Mr. Stoddard while Mr. Stoddard was handcuffed, shackled, and restrained by multiple officers as well as a restraint chair.

136.

Defendant Good struck, punched, kicked, and otherwise physically assaulted Mr. Stoddard while Mr. Stoddard was handcuffed, shackled, and restrained by

multiple officers as well as a restraint chair.

137.

Defendant Blevins struck, punched, kicked, and otherwise physically assaulted Mr. Stoddard while Mr. Stoddard was handcuffed, shackled, and restrained by multiple officers as well as a restraint chair.

138.

Defendant Salyer struck, punched, kicked, and otherwise physically assaulted Mr. Stoddard while Mr. Stoddard was handcuffed, shackled, and restrained by multiple officers as well as a restraint chair.

139.

During this encounter, Mr. Stoddard was handcuffed behind his back, was yelling and screaming, was profusely sweating, was cold to the touch, rambling nonsensically about his wife and children, wasn't making sense with his words and did not seem to understand what was going on around him.

140.

During this encounter Mr. Stoddard yelled "They are going to kill me"

141.

During this encounter, Defendant Gilliam believed that Mr. Stoddard was experiencing mental health issues.

142.

During this encounter, Defendant King was as a trainee with Deputy Amyx, and after being told to use a taser on Mr. Stoddard, hesitated.

143.

After the encounter, Defendant Blevins characterized the level of force used as excessive said that it was his understanding that handcuffed arrestees should not be struck.

144.

A Sullivan County nurse watched officers struggle with Mr. Stoddard before finally yelling that she had seen enough and that Stoddard needed to go to the hospital.

145.

The Sullivan County nurse believed that Mr. Stoddard was nearing the point of excited delirium.

146.

After Mr. Stoddard's autopsy, Dr. Cook noted that Stoddard displayed Rib Callous and Frontal Area Deep Scalp hemorrhage.

147.

At around 21:42 p.m., Mr. Stoddard can be heard struggling and asking to walk

Page **37** of

himself back to the police vehicle. He is loaded into the back of the vehicle and can be heard breathing heavily.

148.

At around 21:42 p.m., Mr. Stoddard can be heard struggling and asking to walk himself back to the police vehicle. He is loaded into the back of the vehicle and can be heard breathing heavily.

149.

At around 21:47 p.m. Mr. Stoddard's transport car departed the area in route to the hospital as directed by the jail nurse.

150.

On May 21,2024, at around 21:47 p.m., while Mr. Stoddard was en route to the hospital, the following interaction between Defendant Gilliam and Mr. Stoddard occurred:

Officer: *"Shut the fuck up"*

Mr. Stoddard: *"I love you guys. Thank you."*

Mr. Stoddard: *"Let me out please. I don't deserve to go. Let me out i'll walk into jail. Let me out.*

Officer: *"No."*

Mr. Stoddard: *"Let me out, I wont resist anymore, I'll walk in freely. Let me do*

Page **38** of

*it my way. No!"*

Officer: *"Now youre going to the hospital"*

Mr. Stoddard: Begins crying *"I don't wanna go there. I just came from there. D on't take me please. I'm broken, I cant fight anymore. Take me to the chair, I don't deserve it, I'm too weak."*

Officer: *"Shut the fuck up! I'm going to \*unknown\* the fucking shit out of you dude"*

Officer: The officer can be heard talking on the phone to an unknown person describing the arrest. He said that jail staff told them that he needs to be cleared by medical first.

Officer: The officer appears upset and when asked by another officer why they want him checked out he answers, *"because they are fucking bitches. Shut the fuck up! God damnit!"*

Mr. Stoddard: *"Promise me they are safe. I know you're a good man. Help me, you were fallen. Please, I got my hand on the handle and I'm not letting go. I promise. Please. I'm tired, I'm weak, I cant make it by myself I need my family. Let me go!"*

Officer: *"Shut up. I'm not letting you go you're under arrest."* (laughs in a mocking manner)

Mr. Stoddard: *"Why are you fucking with me so hard? I deserve it I know, but I know you don't want to do it. Please I beg you, take me to jail. Eli is not even my son. I took him to a house with a gun. I didn't take mine I'm innocent."*

Officer: The office reached speeds in excess of 90 mph during this portion of the recording. It appeared that he was possibly on this cell phone during this portion of the recording.

## **Emergency Room Facts**

### 151.

At around 22:06 p.m., Defendant Gilliam arrived at hospital and Mr. Stoddard was checked into the Emergency Room.

### 152.

When Mr. Stoddard was admitted to the hospital for medical review, his heart rate was abnormally high and he was sweating excessively

### 153.

Through the next day, Mr. Stoddard remained in the hospital under the watch of Sullivan County deputies.

### 154.

While at the hospital Defendant Cunningham and Defendant Good placed Mr. Stoddard's handcuffs and shackles too tightly. Mr. Stoddard's handcuffs and shackles were so tight that they were digging into Mr. Stoddard's wrists and ankles causing

Page **40** of

him to bleed.

155.

Nurses informed jail guards, such as Defendant Cunningham and Defendant Good that Mr. Stoddard's handcuffs were too tight and Mr. Stoddard's handcuffs were visibly causing him to bleed.

156.

However, Defendant Cunningham and Defendant Good ignored these signs that Mr. Stoddard's handcuffs were too tight for an extended period of time.

157.

At the hospital, Nurse Jenkins noted that Stoddard's left handcuff was digging into his skin and stated that she was concerned about the tightness of the handcuff and requested for it to be loosened.

158.

After Mr. Stoddard entered his coma near the end of his hospital stay there was blood splatters in hospital room, which were likely from the cuts on Mr. Stoddard's wrists and ankles.

159.

On the day that Mr. Stoddard entered a coma, Defendant Cunningham and Mr. Stoddard engaged in a struggle.

160.

During this struggle, Defendant Cunningham's firearm discharged within his holster and an active shooter alarm was triggered.

161.

No one was hurt by the gunshot.

162.

Defendant Cunningham called for assistance and put his hand on the weapon to keep it in the holster.

163.

During the struggle, Defendant Cunningham then began delivering multiple closed fist strikes to Mr. Stoddard's head region.

164.

Defendant Cunningham flipped Stoddard to the floor and after some distance was created, tried to fire the gun at Mr. Stoddard once, found it jammed, then tried again and found it had no rounds inside.

165.

Defendant Cunningham then pulled his baton and began striking Mr. Stoddard.

166.

Mr. Stoddard then grabbed Defendant Cunningham's baton and began saying just let me kill myself.

167.

Defendant Cunningham then felt his right knee give way and kept his distance from Mr. Stoddard, who had begun striking himself in the face with Defendant Cunningham's baton.

### 168.

Defendant Cunningham was still in possession of his gun at this time.

### 169.

At no point did Mr. Stoddard have sole control over Defendant Cunningham's gun.

### 170.

Thereafter hospital security arrived and learned that there was no active shooter in the room.

### 171.

Hospital security then pepper sprayed Mr. Stoddard, took away the baton, and wrestled him to the ground.

### 172.

During this time, Mr. Stoddard's feet were shackled and he had on handcuff on and the other hand free.

### 173.

For a period of several minutes, the hospital security had Mr. Stoddard in a prone position with one of Mr. Stoddard's hands behind his back and one stuck in

front of his body.

174.

Deputy Bowlin eventually responded to Bristol Regional Medical center for an officer requesting assistance and panic button activation.

175.

Upon arrival, Deputy Bowlin located the SCSO corrections officer who was in the hallway, and he was advised that Mr. Stoddard was not armed but security was still fighting to secure Mr. Stoddard.

176.

When Defendant Bowlin entered the room, he observed two Bristol Regional Hospital Security officers struggling with Mr. Stoddard to secure him in handcuffs.

177.

When Defendant Bowlin entered the room, he saw Mr. Stoddard in a prone position with two security guards on top of him.

178.

Defendant Bowlin placed his knee on the upper back of Mr. Stoddard while attempting to secure Mr. Stoddard's arm. This pressure caused Mr. Stoddard to asphyxiate and die.

179.

Bowlin observed Stoddard exhale deeply and relax. He also saw Mr.

Stoddard's head turn blue

180.

The last noise heard from Mr. Stoddard occurred well before Defendant Bowlin's efforts to restrain Mr. Stoddard ceased, and they continued to restrain Mr. Stoddard even after he went unconscious.

181.

Medical providers were then called into the room and a nurse immediately yelled "get him out of those handcuffs!"

182.

When medical providers entered the room, they noted that "Pt skin was dusky and he did not appear to be breathing.

183.

On May 23, 2024, providers reported that gastric contents were noted at intubation. Mr. Stoddard was compressed so much that providers noted significant gastric contents in his oropharynx.

184.

Mr. Stoddard was diagnosed with an anoxic brain injury following resuscitation and remained in a coma on life support until he passed away approximately seven weeks later.

185.

Mr. Stoddard's restraints were very tight. According to his autopsy, which was conducted almost two months after his admission, he suffered from discontinuous healing abrasions up to 2 inches in diameter to his right wrist, discontinuous healing abrasions up to 1 inch in diameter to his left risk, a left posterior heel abrasion measuring ¾ inches, a right medial ankle abrasion measuring ¼ inches with an abrased contusion, and a right anterior ankle abrasion measuring ½ inch with an abrased contusion.

186.

Mr. Stoddard died at approximately 9:48 PM on July 13, 2024 at the age of 41 years old.An autopsy of Mr. Stoddard was performed at the William L. Jenkins Forensic Center on July 16, 2024 by Dr. Emily V. Cook.

187.

The autopsy report identified pathological diagnoses which included "Complications of sudden cardiac arrest and anoxic brain injury in the setting of police restraint".

188.

The cause of Mr. Stoddard's death was "complications of sudden cardiac arrest and anoxic brain injury in the setting of police restraint, hypertensive cardiovascular disease, and morbid obesity", and the manner of death was a homicide.

189.

The autopsy report identified that Mr. Stoddard became unresponsive after officers were attempting to restrain him while prone.

<div align="center">**<u>Facts Related To Policy and Pattern of Abuse</u>**</div>

**Failure to Train on Use of Force and Deficient Use of Force Policy**

<div align="center">190.</div>

Defendant Sullivan County and Defendant Cassidy failed to train the Assualting Deputies on the proper use of force when an arrestee is handcuffed and in shackles.

<div align="center">191.</div>

After Mr. Stoddard was assaulted at the jail, Defendant Amyx stated that Sullivan County Sheriff's office training and policy includes the use of pain compliance for resistant subjects and Defendant Amyx attributed the way he conducted himself to his training policy.

<div align="center">192.</div>

Defendant Gilliam also attributed his use of force at the jail to his training.

<div align="center">193.</div>

The Assaulting Deputies were not trained on how to minimize the use of force and when force is needed.

<div align="center">194.</div>

Defendant Cassidy and Defendant Sullivan County lacks adequate policy or training to guide staff to use appropriate force techniques.

<div align="center">Page **47** of</div>

195.

Defendant Cassidy and Defendant Sullivan County fails to adequately investigate uses of force or take sufficient steps to prevent excessive force by holding staff who use excessive force accountable

196.

Sheriff deputies regularly use force when no force is necessary and routinely use force that is disproportionate to the threat

197.

Sheriff deputies regularly use force where unnecessary and to a greater degree than necessary.

198.

Sheriff deputies use force on people experiencing mental health crises without first involving mental health staff or attempting to de-escalate

199.

Policy, training, and accountability systems by Defendant Cassidy and Defendant Sullivan County are inadequate to prevent excessive force

200.

Defendant Cassidy and Defendant Sullivan County also lacks adequate policies and systems to train staff to use appropriate force and hold staff accountable for using excessive force.

201.

Page **48** of

Defendant Cassidy and Defendant Sullivan County lacks adequate policy and training to guide officers in the appropriate use of force.

202.

Defendant Cassidy and Defendant Sullivan County also lacks systems to identify excessive force and address it.

203.

Defendant Cassidy's and Defendant Sullivant County's use of force training and policy caused the Assaulting Deputies to strike, knee, punch, elbow, tase, and otherwise assault Mr. Stoddard while he was handcuffed, shackled, and restrained.

**Mental Health on Arrestees Custom and Failure to Train-**

204.

It is not the practice of Sullivan County Sheriff Office, due to the leadership of Defendant Cassidy and Defendant Sullivan County, for deputies to make mental health care determinations for arrestees. Rather that responsibility falls to the health care coordinator of the jail.

205.

This custom and failure to train causes Sullivan County deputies to mistake mental health crisis for drug highs and engage with arrestees in a way that further worsens their mental health crisis.

206.

Page **49** of

Further, due to the lack of training and this custom, officers are not equipped to deal with mental health crisis in the field and are unable to anticipate the behavior of a person suffering from a mental health crisis.

207.

This custom and lack of training caused Mr. Stoddard's injuries as the individual Defendants in this case mistook Mr. Stoddard's mental health crisis with a drug induced high and this resulted in an escalation of excessive force.

**Hard Restraint Policy**

208.

Defendant Sullivan County and Defendant Cassidy only issue metal hinge style handcuffs and did not issue flex cuffs or equivalents

209.

Per department policy, officers are required to use department issued handcuffs or handcuffs that are equivalent.

210.

This policy does not leave room for arrestees whose wrists are injured or being wounded by the metal handcuffs.

211.

This rigid policy caused Mr. Stoddard to suffer from injuries and pain and suffering as his handcuffs and shackles were digging into his skin, causing him to bleed

Page **50** of

and causing him much pain and discomfort.

## Waiver of Immunity

### 212.

Sullivan County has waived immunity for for intentional acts or misconduct done by officers, deputies, or employees under color of law, as set out in Tenn. Code Ann. §8-8-302.

### 213.

There is no immunity for individuals for criminal conduct or conduct which is willful or malicious.

## COUNT ONE
## VIOLATION OF FEDERAL RIGHTS PURSUANT TO 42 U.S.C. 1983
### Excessive Force in Violation of the Fourth and Fourteenth Amendment; of Unduly Tight or Excessively Forceful Handcuffing
### (Against Defendant Salyer, Individually)

### 214.

Plaintiff incorporates by reference all the above allegations as if fully set forth herein.

### 215.

Mr. Stoddard had a constitutional right to be free from the unlawful and excessive use of force, pursuant to the Fourth and Fourteenth Amendments.

### 216.

In doing the acts or omissions complained of above, Defendant Salyer acted under the color of law to deprive Mr. Stoddard of his constitutionally protected

Page **51** of

rights, including, but not limited to:

a. The right to be free from unreasonable searches and seizures, as guaranteed by the Fourth Amendment to the United States Constitution;

b. The right not to be deprived of life or liberty without due process of law, as guaranteed by the Fourteenth Amendment to the United States Constitution;

c. The right to be free from the use of excessive force by state officers and actors, which is guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution; and

d. The right to be free from deprivation of liberty and injury without substantive due process. The right to be free from unlawful, reckless, deliberately indifferent, and conscience-shocking deadly and/or excessive force under the United States Constitution and its Amendments.

217.

Defendant Salyer, under color of state law, intentionally, unlawfully, and unreasonably seized Mr. Stoddard by means of excessive force.

218.

Force decisions must reasonably consider the officer's objective for using force; the Officer's reasonable perceptions of the subject's actions or behaviors the officer is attempting to stop, thwart, or control; the foreseeable risks of injuries or harm to the subject resulting from the force to be used and the foreseeable

secondary risks of injury.

219.

Defendant Salyer did not take reasonable preventative measures and instead deployed an unreasonable and excessive amount of force.

220.

Defendant Salyer actively participated in excessive force in violation of Mr. Stoddard's Fourth and Fourteenth Amendment Rights when he forcefully and excessively tightened Mr. Stoddard's handcuffs to the extent that they were digging into Mr. Stoddard's wrists and causing him to bleed.

221.

Mr. Stoddard screamed in pain while handcuffed and every officer would have noticed that Mr. Stoddard's handcuffs were too tight as his wrists were bleeding.

222.

However, Defendant Salyer ignored these screams of pain and did not loosen Mr. Stoddard's handcuffs.

223.

As a result of the handcuffing Mr. Stoddard suffered from open wounds at the sites of his wrists.

224.

The force used by Defendant Salyer amounted to unlawful force that carried

with it a high risk of causing serious bodily harm to Mr. Stoddard, and the use of such force was unnecessary and unreasonable under the circumstances then and there existing.

<div align="center">225.</div>

Defendant Salyer's use of force was excessive and unreasonable because, there was no basis for using this type of force against Mr. Stoddard, the force used against Mr. Stoddard was gratuitous, and Mr. Stoddard's hands could have been restrained by less harmful means.

<div align="center">226.</div>

Defendant Salyer acted objectively unreasonably in applying excessive force upon Mr. Stoddard because there was no justification for placing Mr. Stoddard's handcuffs on so tightly.

<div align="center">227.</div>

As indicated above, the totality of the circumstances did not justify the excessive force exercised by Defendant Salyer.

<div align="center">228.</div>

The totality of circumstances reveals that Defendant Salyer's excessive tightening of Mr. Stoddard's handcuffs was unreasonable, unnecessary, an excessive use- of-force, and violated Mr. Stoddard's constitutional rights.

<div align="center">229.</div>

Defendant Salyer's actions were under color of law and deprived Mr. Stoddard of his rights secured under the Constitution. These actions— done with actual malice—caused Mr. Stoddard physical and mental pain and suffering, disfiguring injury, and medical bills, among other things.

230.

Defendant Salyer's conduct caused Mr. Stoddard's injuries.

231.

Defendant Salyer is not entitled to qualified immunity for his conduct because his excessive force violated the basic legal principle that "The Fourth Amendment prohibits unduly tight or excessively forceful handcuffing during the course of a seizure." *Morrison v. Bd. Of Trs. Of Green Twp.*, 583 F.3d 394 (6th Cir. 2009).

232.

Defendant Salyer is not entitled to qualified immunity for his conduct because it was so egregious that everyone would know it violated the Constitution.

233.

As a result of the wrongful conduct described above, Plaintiff and/or Mr. Stoddard suffered from general and special damages, including but not limited to, physical and mental pain and suffering, loss of consortium, lost wages, lost earning capacity, medical bills, and loss of enjoyment of life.

234.

Defendant Salyer acted intentionally, maliciously, and/or recklessly and in disregard of Mr. Stoddard's health, safety, and constitutional rights when he forcefully tightened Mr. Stoddard's handcuffs until he began to bleed and did not loosen the handcuffs even after the bleeding. This conduct shocks the conscience and is fundamentally offensive in a civilized society, so as to justify the imposition of punitive damages on Defendant Salyer. This is supported by the above facts and allegations that show Defendant Salyer's intentional, malicious, willful, wanton, and/or reckless excessive force onto Mr. Stoddard.

235.

Plaintiff is entitled to an award of attorneys' fees, costs, and expenses under 42 U.S.C. § 1988.

**COUNT TWO**
**VIOLATION OF FEDERAL RIGHTS PURSUANT TO 42 U.S.C. 1983**
**Excessive Force in Violation of the Fourth and Fourteenth Amendment; of**
**Unduly Tight or Excessively Forceful Handcuffing and Shackling**
**(Against Defendant Gilliam, Individually)**

236.

Plaintiff incorporates by reference all the above allegations as if fully set forth herein.

237.

Mr. Stoddard had a constitutional right to be free from the unlawful and

excessive use of force, pursuant to the Fourth and Fourteenth Amendments.

238.

In doing the acts or omissions complained of above, Defendant Gilliam acted under the color of law to deprive Mr. Stoddard of his constitutionally protected rights, including, but not limited to:

a. The right to be free from unreasonable searches and seizures, as guaranteed by the Fourth Amendment to the United States Constitution;

b. The right not to be deprived of life or liberty without due process of law, as guaranteed by the Fourteenth Amendment to the United States Constitution;

c. The right to be free from the use of excessive force by state officers and actors, which is guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution; and

d. The right to be free from deprivation of liberty and injury without substantive due process. The right to be free from unlawful, reckless, deliberately indifferent, and conscience-shocking deadly and/or excessive force under the United States Constitution and its Amendments.

239.

Defendant Gilliam, under color of state law, intentionally, unlawfully, and unreasonably seized Mr. Stoddard by means of excessive force.

240.

Force decisions must reasonably consider the officer's objective for using force; the Officer's reasonable perceptions of the subject's actions or behaviors the officer is attempting to stop, thwart, or control; the foreseeable risks of injuries or harm to the subject resulting from the force to be used and the foreseeable secondary risks of injury.

241.

Defendant Gilliam did not take reasonable preventative measures and instead deployed an unreasonable and excessive amount of force.

242.

Defendant Gilliam's actively participated in excessive force in violation of Mr. Stoddard's Fourth and Fourteenth Amendment Rights when he forcefully and excessively tightened Mr. Stoddard's handcuffs and shackles to the extent that they were digging into Mr. Stoddard's wrists and ankles causing Mr. Stoddard to bleed.

243.

Mr. Stoddard screamed in pain while handcuffed and shackled, and every officer would have noticed that Mr. Stoddard's handcuffs were too tight as his wrists and ankles were bleeding.

244.

However, Defendant Gilliam ignored these screams of pain and did not loosen Mr. Stoddard's handcuffs and shackles.

Page **58** of

245.

As a result of the handcuffing and shackling, Mr. Stoddard suffered from open wounds at the sites of his wrists and ankles.

246.

The force used by Defendant Gilliam amounted to unlawful force that carried with it a high risk of causing serious bodily harm to Mr. Stoddard, and the use of such force was unnecessary and unreasonable under the circumstances then and there existing.

247.

Defendant Gilliam's use of force was excessive and unreasonable because, among other things, there was no basis for using this type of force against Mr. Stoddard, the force used against Mr. Stoddard was gratuitous, and Mr. Stoddard's hands and feet could have been restrained by less harmful means.

248.

Defendant Gilliam acted objectively unreasonably in applying excessive force upon Mr. Stoddard because there was no justification for placing Mr. Stoddard's handcuffs and shackles on so tightly.

249.

As indicated above, the totality of the circumstances did not justify the excessive force exercised by Defendant Gilliam.

250.

The totality of circumstances reveals that Defendant Gilliam's excessively-tight handcuffing and shackling of Mr. Stoddard was unreasonable, unnecessary, an excessive use- of-force, and violated Mr. Stoddard's constitutional rights.

251.

Defendant Gilliam's actions were under color of law and deprived Mr. Stoddard of his rights secured under the Constitution. These actions— done with actual malice—caused Mr. Stoddard physical and mental pain and suffering disfiguring injury, and medical bills, among other things.

252.

Defendant Gilliam's conduct caused Mr. Stoddard's injuries.

253.

Defendant Gilliam is not entitled to qualified immunity for his conduct because his excessive force violated the basic legal principle that "The Fourth Amendment prohibits unduly tight or excessively forceful handcuffing during the course of a seizure." *Morrison v. Bd. Of Trs. Of Green Twp.*, 583 F.3d 394 (6th Cir. 2009).

254.

Defendant Gilliam is not entitled to qualified immunity for his conduct because it was so egregious that everyone would know it violated the Constitution.

255.

As a result of the wrongful conduct described above, Plaintiff and/or Mr. Stoddard suffered from general and special damages, including but not limited to, physical and mental pain and suffering, loss of consortium, lost wages, lost earning capacity, medical bills, and loss of enjoyment of life.

256.

Defendant Gilliam acted intentionally, maliciously, and/or recklessly and in disregard of Mr. Stoddard's health, safety, and constitutional rights when he forcefully tightened Mr. Stoddard's handcuffs and shackles until he began to bleed and did not loosen the handcuffs and shackles even after the bleeding This conduct shocks the conscience and is fundamentally offensive in a civilized society, so as to justify the imposition of punitive damages on Defendant Gilliam. This is supported by the above facts and allegations that show Defendant Gilliam's intentional, malicious, willful, wanton, and/or reckless excessive force onto Mr. Stoddard.

257.

Plaintiff is entitled to an award of attorneys' fees, costs, and expenses under 42 U.S.C. § 1988.

**COUNT THREE**
**VIOLATION OF FEDERAL RIGHTS PURSUANT TO 42 U.S.C. 1983**
**Excessive Force in Violation of the Fourth and Fourteenth Amendment;**

**Unduly Tight or Excessively Forceful Shackling**
**(Against Defendant Harer, Individually)**

258.

Plaintiff incorporates by reference all the above allegations as if fully set forth herein.

259.

Mr. Stoddard had a constitutional right to be free from the unlawful and excessive use of force, pursuant to the Fourth and Fourteenth Amendments.

260.

In doing the acts or omissions complained of above, Defendant Harer acted under the color of law to deprive Mr. Stoddard of his constitutionally protected rights, including, but not limited to:

a. The right to be free from unreasonable searches and seizures, as guaranteed by the Fourth Amendment to the United States Constitution;

b. The right not to be deprived of life or liberty without due process of law, as guaranteed by the Fourteenth Amendment to the United States Constitution;

c. The right to be free from the use of excessive force by state officers and actors, which is guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution; and

d. The right to be free from deprivation of liberty and injury without substantive due process. The right to be free from unlawful, reckless, deliberately

indifferent, and conscience-shocking deadly and/or excessive force under the United States Constitution and its Amendments.

261.

Defendant Harer, under color of state law, intentionally, unlawfully, and unreasonably seized Mr. Stoddard by means of excessive force.

262.

Force decisions must reasonably consider the officer's objective for using force; the Officer's reasonable perceptions of the subject's actions or behaviors the officer is attempting to stop, thwart, or control; the foreseeable risks of injuries or harm to the subject resulting from the force to be used and the foreseeable secondary risks of injury.

263.

Defendant Harer did not take reasonable preventative measures and instead deployed an unreasonable and excessive amount of force.

264.

Defendant Harer's actively participated in excessive force in violation of Mr. Stoddard's Fourth and Fourteenth Amendment Rights when he forcefully and excessively tightened Mr. Stoddard's shackles to the extent that they were digging into Mr. Stoddard's ankles and causing him to bleed.

265.

Mr. Stoddard screamed in pain while handcuffed and every officer would have noticed that Mr. Stoddard's shackles were too tight as his ankles were bleeding.

266.

However, Defendant Harer ignored these screams of pain and did not loosen Mr. Stoddard's shackles.

267.

As a result of the shackling, Mr. Stoddard suffered from open wounds at the sites of his ankles.

268.

The force used by Defendant Harer amounted to unlawful force that carried with it a high risk of causing serious bodily harm to Mr. Stoddard, and the use of such force was unnecessary and unreasonable under the circumstances then and there existing.

269.

Defendant Harer's use of force was excessive and unreasonable because, among other things, there was no basis for using this type of force against Mr. Stoddard, the force used against Mr. Stoddard was gratuitous, and Mr. Stoddard's feet could have been restrained by less harmful means.

270.

Defendant Harer acted objectively unreasonably in applying excessive force

upon Mr. Stoddard because there was no justification for placing Mr. Stoddard's shackles on so tightly.

271.

As indicated above, the totality of the circumstances did not justify the excessive force exercised by Defendant Harer.

272.

The totality of circumstances reveals that Defendant Harer's excessive tightening of Mr. Stoddard's shackles was unreasonable, unnecessary, an excessive use- of-force, and violated Mr. Stoddard's constitutional rights.

273.

Defendant Harer's actions were under color of law and deprived Mr. Stoddard of his rights secured under the Constitution. These actions— done with actual malice—caused Mr. Stoddard physical and mental pain and suffering, disfiguring injury, and medical bills among other things.

274.

Defendant Harer's conduct caused Mr. Stoddard's injuries.

275.

Defendant Harer is not entitled to qualified immunity for his conduct because his excessive force violated the basic legal principle that "The Fourth Amendment prohibits unduly tight or excessively forceful handcuffing during the

course of a seizure." *Morrison v. Bd. Of Trs. Of Green Twp.*, 583 F.3d 394 (6th Cir. 2009).

276.

Defendant Harer is not entitled to qualified immunity for his conduct because it was so egregious that everyone would know it violated the Constitution.

277.

As a result of the wrongful conduct described above, Plaintiff and/or Mr. Stoddard suffered from general and special damages, including but not limited to, physical and mental pain and suffering, loss of consortium, lost wages, lost earning capacity, medical bills, and loss of enjoyment of life.

278.

Defendant Harer acted intentionally, maliciously, and/or recklessly and in disregard of Mr. Stoddard's health, safety, and constitutional rights when he forcefully tightened Mr. Stoddard's shackles until he began to bleed and did not loosen them even after the bleeding began. This conduct shocks the conscience and is fundamentally offensive in a civilized society, so as to justify the imposition of punitive damages on Defendant Harer. This is supported by the above facts and allegations that show Defendant Harer's intentional, malicious, willful, wanton, and/or reckless use of excessive force onto Mr. Stoddard.

279.

Plaintiff is entitled to an award of attorneys' fees, costs, and expenses under 42 U.S.C. § 1988.

## COUNT FOUR
### VIOLATION OF FEDERAL RIGHTS PURSUANT TO 42 U.S.C. 1983
### Excessive Force in Violation of the Fourth and Fourteenth Amendment;
### Unduly Tight or Excessively Forceful Shackling
### (Against Defendant Wade, Individually)

280.

Plaintiff incorporates by reference all the above allegations as if fully set forth herein.

281.

Mr. Stoddard had a constitutional right to be free from the unlawful and excessive use of force, pursuant to the Fourth and Fourteenth Amendments.

282.

In doing the acts or omissions complained of above, Defendant Wade acted under the color of law to deprive Mr. Stoddard of his constitutionally protected rights, including, but not limited to:

   a. The right to be free from unreasonable searches and seizures, as guaranteed by the Fourth Amendment to the United States Constitution;

   b. The right not to be deprived of life or liberty without due process of law, as guaranteed by the Fourteenth Amendment to the United States Constitution;

Page **67** of

c. The right to be free from the use of excessive force by state officers and actors, which is guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution; and

d. The right to be free from deprivation of liberty and injury without substantive due process. The right to be free from unlawful, reckless, deliberately indifferent, and conscience-shocking deadly and/or excessive force under the United States Constitution and its Amendments.

283.

Defendant Wade, under color of state law, intentionally, unlawfully, and unreasonably seized Mr. Stoddard by means of excessive force.

284.

Force decisions must reasonably consider the officer's objective for using force; the Officer's reasonable perceptions of the subject's actions or behaviors the officer is attempting to stop, thwart, or control; the foreseeable risks of injuries or harm to the subject resulting from the force to be used and the foreseeable secondary risks of injury.

285.

Defendant Wade did not take reasonable preventative measures and instead deployed an unreasonable and excessive amount of force.

286.

Defendant Wade actively participated in excessive force in violation of Mr.

Stoddard's Fourth and Fourteenth Amendment Rights when he forcefully and excessively tightened Mr. Stoddard's shackles to the extent that they were digging into Mr. Stoddard's ankles and causing him to bleed.

287.

Mr. Stoddard screamed in pain while shackled, and every officer would have noticed that Mr. Stoddard's shackles were too tight as his ankles were bleeding.

288.

However, Defendant Wade ignored these screams of pain and did not loosen Mr. Stoddard's shackles.

289.

As a result of the shackling, Mr. Stoddard suffered from open wounds at the sites of his ankles.

290.

The force used by Defendant Wade amounted to unlawful force that carried with it a high risk of causing serious bodily harm to Mr. Stoddard, and the use of such force was unnecessary and unreasonable under the circumstances then and there existing.

291.

Defendant Wade's use of force was excessive and unreasonable because, among other things, there was no basis for using this type of force against

Mr. Stoddard, the force used against Mr. Stoddard was gratuitous, and Mr. Stoddard's feet could have been restrained by less harmful means.

292.

Defendant Wade acted objectively unreasonably in applying excessive force upon Mr. Stoddard because there was no justification for placing Mr. Stoddard's shackles on so tightly.

293.

As indicated above, the totality of the circumstances did not justify the excessive force exercised by Defendant Wade.

294.

The totality of circumstances reveals that Defendant Wade's excessive tightening of Mr. Stoddard's shackles was unreasonable, unnecessary, an excessive use- of-force, and violated Mr. Stoddard's constitutional rights.

295.

Defendant Wade's actions were under color of law and deprived Mr. Stoddard of his rights secured under the Constitution. These actions— done with actual malice—caused Mr. Stoddard physical and mental pain and suffering, disfiguring injury, and medical bills, among other things.

296.

Defendant Wade's conduct caused Mr. Stoddard's injuries.

297.

Defendant Wade is not entitled to qualified immunity for his conduct because his excessive force violated the basic legal principle that "The Fourth Amendment prohibits unduly tight or excessively forceful handcuffing during the course of a seizure." *Morrison v. Bd. Of Trs. Of Green Twp.*, 583 F.3d 394 (6th Cir. 2009).

298.

Defendant Wade is not entitled to qualified immunity for his conduct because it was so egregious that everyone would know it violated the Constitution.

299.

As a result of the wrongful conduct described above, Plaintiff and/or Mr. Stoddard suffered from general and special damages, including but not limited to, physical and mental pain and suffering, loss of consortium, lost wages, lost earning capacity, medical bills, and loss of enjoyment of life.

300.

Defendant Wade acted intentionally, maliciously, and/or recklessly and in disregard of Mr. Stoddard's health, safety, and constitutional rights when he forcefully tightened Mr. Stoddard's shackles until he began to bleed and did not loosen them even after bleeding. This conduct shocks the conscience and is fundamentally offensive in a civilized society, so as to justify the imposition of

punitive damages on Defendant Wade. This is supported by the above facts and allegations that show Defendant Wade's intentional, malicious, willful, wanton, and/or reckless use of excessive force onto Mr. Stoddard.

301.

Plaintiff is entitled to an award of attorneys' fees, costs, and expenses under 42 U.S.C. § 1988.

## COUNT FIVE
### VIOLATION OF FEDERAL RIGHTS PURSUANT TO 42 U.S.C. 1983
### Excessive Force in Violation of the Fourth and Fourteenth Amendment;
### Unduly Tight or Excessively Forceful Handcuffing and Shackling
### (Against Defendant Cunningham, Individually)

302.

Plaintiff incorporates by reference all the above allegations as if fully set forth herein.

303.

Mr. Stoddard had a constitutional right to be free from the unlawful and excessive use of force, pursuant to the Fourth and Fourteenth Amendments.

304.

In doing the acts or omissions complained of above, Defendant Cunningham acted under the color of law to deprive Mr. Stoddard of his constitutionally protected rights, including, but not limited to:

a. The right to be free from unreasonable searches and seizures, as guaranteed by

the Fourth Amendment to the United States Constitution;

b. The right not to be deprived of life or liberty without due process of law, as guaranteed by the Fourteenth Amendment to the United States Constitution;

c. The right to be free from the use of excessive force by state officers and actors, which is guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution; and

d. The right to be free from deprivation of liberty and injury without substantive due process. The right to be free from unlawful, reckless, deliberately indifferent, and conscience-shocking deadly and/or excessive force under the United States Constitution and its Amendments.

305.

Defendant Cunningham, under color of state law, intentionally, unlawfully, and unreasonably seized Mr. Stoddard by means of excessive force.

306.

Force decisions must reasonably consider the officer's objective for using force; the Officer's reasonable perceptions of the subject's actions or behaviors the officer is attempting to stop, thwart, or control; the foreseeable risks of injuries or harm to the subject resulting from the force to be used and the foreseeable secondary risks of injury.

307.

Defendant Cunningham did not take reasonable preventative measures and instead deployed an unreasonable and excessive amount of force.

308.

Defendant Cunningham actively participated in excessive force in violation of Mr. Stoddard's Fourth and Fourteenth Amendment Rights when he forcefully and excessively tightened Mr. Stoddard's handcuffs and shackles to the extent that they were digging into Mr. Stoddard's wrists and causing him to bleed.

309.

Nurses at the hospital informed jail guards such as Defendant Cunningham that Mr. Stoddard's handcuffs were too tight and every officer would know that Mr. Stoddard's handcuffs and shackles were too tight because they were causing Mr. Stoddard to visibly bleed.

310.

However, Defendant Cunningham did not loosen Mr. Stoddard's handcuffs and shackles for extended periods of time.

311.

As a result of the handcuffing and shackling, Mr. Stoddard suffered from open wounds at the sites of his wrists and ankles.

312.

The force used by Defendant Cunningham amounted to unlawful force that

carried with it a high risk of causing serious bodily harm to Mr. Stoddard, and the use of such force was unnecessary and unreasonable under the circumstances then and there existing.

313.

Defendant Cunningham's use of force was excessive and unreasonable because, among other things, there was no basis for using this type of force against Mr. Stoddard, the force used against Mr. Stoddard was gratuitous, and Mr. Stoddard's hands and feet could have been restrained in less harmful ways.

314.

Defendant Cunningham acted objectively unreasonably in applying excessive force upon Mr. Stoddard because there was no justification for placing Mr. Stoddard's handcuffs and shackles on so tightly.

315.

As indicated above, the totality of the circumstances did not justify the excessive force exercised by Defendant Cunningham.

316.

The totality of circumstances reveals that Defendant Cunningham's excessive tightening of Mr. Stoddard's handcuffs and shackles was unreasonable, unnecessary, an excessive use- of-force, and violated Mr. Stoddard's constitutional rights.

317.

Defendant Cunningham's actions were under color of law and deprived Mr. Stoddard of his rights secured under the Constitution. These actions— done with actual malice—caused Mr. Stoddard physical and mental pain, disfiguring injuries, and medical bills, among other things.

318.

Defendant Cunningham's conduct caused Mr. Stoddard's injuries.

319.

Defendant Cunningham is not entitled to qualified immunity for his conduct because his excessive force violated the basic legal principle that "The Fourth Amendment prohibits unduly tight or excessively forceful handcuffing during the course of a seizure." *Morrison v. Bd. Of Trs. Of Green Twp.*, 583 F.3d 394 (6th Cir. 2009).

320.

Defendant Cunningham is not entitled to qualified immunity for his conduct because it was so egregious that everyone would know it violated the Constitution.

321.

As a result of the wrongful conduct described above, Plaintiff and/or Mr. Stoddard suffered from general and special damages, including but not limited to, physical and mental pain and suffering, loss of consortium, lost wages, lost earning

capacity, medical bills, and loss of enjoyment of life.

<div align="center">322.</div>

Defendant Cunningham acted intentionally, maliciously, and/or recklessly and in disregard of Mr. Stoddard's health, safety, and constitutional rights when he forcefully tightened Mr. Stoddard's handcuffs and shackles until he began to bleed and did not loosen them even after the bleeding. This conduct shocks the conscience and is fundamentally offensive in a civilized society, so as to justify the imposition of punitive damages on Defendant Cunningham. This is supported by the above facts and allegations that show Defendant Cunningham's intentional, malicious, willful, wanton, and/or reckless beating of Mr. Stoddard.

<div align="center">323.</div>

Plaintiff is entitled to an award of attorneys' fees, costs, and expenses under 42 U.S.C. § 1988.

<div align="center">

**COUNT SIX**
**VIOLATION OF FEDERAL RIGHTS PURSUANT TO 42 U.S.C. 1983**
**Excessive Force in Violation of the Fourth and Fourteenth Amendment;**
**Unduly Tight or Excessively Forceful Handcuffing and Shackling**
**(Against Defendant Good, Individually)**

</div>

<div align="center">324.</div>

Plaintiff incorporates by reference all the above allegations as if fully set forth herein.

<div align="center">325.</div>

<div align="center">Page **77** of</div>

Mr. Stoddard had a constitutional right to be free from the unlawful and excessive use of force, pursuant to the Fourth and Fourteenth Amendments.

326.

In doing the acts or omissions complained of above, Defendant Good acted under the color of law to deprive Mr. Stoddard of his constitutionally protected rights, including, but not limited to:

a. The right to be free from unreasonable searches and seizures, as guaranteed by the Fourth Amendment to the United States Constitution;

b. The right not to be deprived of life or liberty without due process of law, as guaranteed by the Fourteenth Amendment to the United States Constitution;

c. The right to be free from the use of excessive force by state officers and actors, which is guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution; and

d. The right to be free from deprivation of liberty and injury without substantive due process. The right to be free from unlawful, reckless, deliberately indifferent, and conscience-shocking deadly and/or excessive force under the United States Constitution and its Amendments.

326.

Defendant Good, under color of state law, intentionally, unlawfully, and unreasonably seized Mr. Stoddard by means of excessive force.

327.

Force decisions must reasonably consider the officer's objective for using force; the Officer's reasonable perceptions of the subject's actions or behaviors the officer is attempting to stop, thwart, or control; the foreseeable risks of injuries or harm to the subject resulting from the force to be used and the foreseeable secondary risks of injury.

328.

Defendant Good did not take reasonable preventative measures and instead deployed an unreasonable and excessive amount of force.

329.

Defendant Good actively participated in excessive force in violation of Mr. Stoddard's Fourth and Fourteenth Amendment Rights when he forcefully and excessively tightened Mr. Stoddard's handcuffs and shackles to the extent that they were digging into Mr. Stoddard's wrists and causing him to bleed.

330.

Nurses at the hospital informed jail guards such as Defendant Good that Mr. Stoddard's handcuffs were too tight and every officer would know that Mr. Stoddard's handcuffs and shackles were too tight because they were causing Mr. Stoddard to visibly bleed.

331.

However, Defendant Good did not loosen Mr. Stoddard's handcuffs and shackles for extended periods of time.

332.

As a result of the handcuffing and shackling, Mr. Stoddard suffered from open wounds at the sites of his wrists and ankles.

333.

The force used by Defendant Good amounted to unlawful force that carried with it a high risk of causing serious bodily harm to Mr. Stoddard, and the use of such force was unnecessary and unreasonable under the circumstances then and there existing.

334.

Defendant Good's use of force was excessive and unreasonable because, among other things, there was no basis for using this type of force against Mr. Stoddard, the force used against Mr. Stoddard was gratuitous, and Mr. Stoddard's hands and feet could have been restrained in less harmful ways.

335.

Defendant Good acted objectively unreasonably in applying excessive force upon Mr. Stoddard because there was no justification for placing Mr. Stoddard's handcuffs and shackles on so tightly.

336.

As indicated above, the totality of the circumstances did not justify the excessive force exercised by Defendant Good.

337.

The totality of circumstances reveals that Defendant Good's excessive tightening of Mr. Stoddard's handcuffs and shackles was unreasonable, unnecessary, an excessive use- of-force, and violated Mr. Stoddard's constitutional rights.

338.

Defendant Good's actions were under color of law and deprived Mr. Stoddard of his rights secured under the Constitution. These actions— done with actual malice—caused Mr. Stoddard physical and mental pain, disfiguring injuries, and medical bills, among other things.

339.

Defendant Good's conduct caused Mr. Stoddard's injuries.

340.

Defendant Good is not entitled to qualified immunity for his conduct because his excessive force violated the basic legal principle that "The Fourth Amendment prohibits unduly tight or excessively forceful handcuffing during the course of a seizure." *Morrison v. Bd. Of Trs. Of Green Twp*., 583 F.3d 394 (6th Cir. 2009).

341.

Defendant Good is not entitled to qualified immunity for his conduct because it was so egregious that everyone would know it violated the Constitution.

342.

As a result of the wrongful conduct described above, Plaintiff and/or Mr. Stoddard suffered from general and special damages, including but not limited to, physical and mental pain and suffering, loss of consortium, lost wages, lost earning capacity, medical bills, and loss of enjoyment of life.

343.

Defendant Good acted intentionally, maliciously, and/or recklessly and in disregard of Mr. Stoddard's health, safety, and constitutional rights when he forcefully tightened Mr. Stoddard's handcuffs and shackles until he began to bleed and did not loosen them even after the bleeding. This conduct shocks the conscience and is fundamentally offensive in a civilized society, so as to justify the imposition of punitive damages on Defendant Good. This is supported by the above facts and allegations that show Defendant Good's intentional, malicious, willful, wanton, and/or reckless beating of Mr. Stoddard.

344.

Plaintiff is entitled to an award of attorneys' fees, costs, and expenses under 42 U.S.C. § 1988.

**COUNT SEVEN**
**VIOLATION OF FEDERAL RIGHTS PURSUANT TO 42 U.S.C. 1983**
**Excessive Force in Violation of the Fourth and Fourteenth Amendment;**
**"Freezing" out Mr. Stoddard to and from the Jail**
**(Against Defendant Gilliam, Individually)**

345.

Plaintiff incorporates by reference all the above allegations as if fully set forth herein.

346.

Mr. Stoddard had a constitutional right to be free from the unlawful and excessive use of force, pursuant to the Fourth and Fourteenth Amendments.

347.

In doing the acts or omissions complained of above, Defendant Gilliam acted under the color of law to deprive Mr. Stoddard of his constitutionally protected rights, including, but not limited to:

a. The right to be free from unreasonable searches and seizures, as guaranteed by the Fourth Amendment to the United States Constitution;

b. The right not to be deprived of life or liberty without due process of law, as guaranteed by the Fourteenth Amendment to the United States Constitution;

c. The right to be free from the use of excessive force by state officers and actors, which is guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution; and

d. The right to be free from deprivation of liberty and injury without substantive due process. The right to be free from unlawful, reckless, deliberately indifferent, and conscience-shocking deadly and/or excessive force under the United States Constitution and its Amendments.

348.

Defendant Gilliam, under color of state law, intentionally, unlawfully, and unreasonably seized Mr. Stoddard by means of excessive force.

349.

Force decisions must reasonably consider the officer's objective for using force; the Officer's reasonable perceptions of the subject's actions or behaviors the officer is attempting to stop, thwart, or control; the foreseeable risks of injuries or harm to the subject resulting from the force to be used and the foreseeable secondary risks of injury.

350.

Defendant Gilliam did not take reasonable preventative measures and instead deployed an unreasonable and excessive amount of force.

351.

Defendant Gilliam's actively participated in excessive force in violation of Mr. Stoddard's Fourth and Fourteenth Amendment Rights when he purposefully rolled down the window and increased the speed of his car in order to cause Mr.

Stoddard physical discomfort and pain.

352.

The force used by Defendant Gilliam amounted to unlawful force that carried with it a high risk of causing serious bodily harm to Mr. Stoddard, and the use of such force was unnecessary and unreasonable under the circumstances then and there existing.

353.

Defendant Gilliam's use of force was excessive and unreasonable because, among other thing, there was no basis for using this type of force against Mr. Stoddard, the force used against Mr. Stoddard was gratuitous, and the force was done for the sole purpose of inflicting pain.

354.

Defendant Gilliam acted objectively unreasonably in applying excessive force upon Mr. Stoddard because there was no justification for "freezing out" Mr. Stoddard.

355.

As indicated above, the totality of the circumstances did not justify the excessive force exercised by Defendant Gilliam.

356.

The totality of circumstances reveals that Defendant Gilliam's "freezing out"

of Mr. Stoddard was unreasonable, unnecessary, an excessive use- of-force, and violated Mr. Stoddard's constitutional rights.

357.

Defendant Gilliam's actions were under color of law and deprived Mr. Stoddard of his rights secured under the Constitution. These actions— done with actual malice—caused Mr. Stoddard physical and mental pain and suffering, among other things.

358.

Defendant Gilliam's conduct caused Mr. Stoddard's injuries.

359.

Defendant Gilliam is not entitled to qualified immunity for his conduct because his excessive force violated the basic legal principle that "It is a constitutional violation for law enforcement officials to use violent physical force "totally without penological justification."" *Hope v. Pelzer*, 536 U.S. 730, 737, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002).

360.

Defendant Gilliam is not entitled to qualified immunity for his conduct because it was so egregious that everyone would know it violated the Constitution.

361.

As a result of the wrongful conduct described above, Plaintiff and/or Mr.

Stoddard suffered from general and special damages, including but not limited to, physical and mental pain and suffering and extreme emotional anguish.

362.

Defendant Gilliam acted intentionally, maliciously, and/or recklessly and in disregard of Mr. Stoddard's health, safety, and constitutional rights when he "freezed out" Mr. Stoddard for the sole purpose of tormenting and torturing him. This conduct shocks the conscience and is fundamentally offensive in a civilized society, so as to justify the imposition of punitive damages on Defendant Gilliam. This is supported by the above facts and allegations that show Defendant Gilliam's intentional, malicious, willful, wanton, and/or reckless beating of Mr. Stoddard.

363.

Plaintiff is entitled to an award of attorneys' fees, costs, and expenses under 42 U.S.C. § 1988.Plaintiff incorporates by reference all the above allegations as if fully set forth herein.

**COUNT EIGHT**
**VIOLATION OF FEDERAL RIGHTS PURSUANT TO 42 U.S.C. 1983**
**Excessive Force in Violation of the Fourth and Fourteenth Amendment;**
**Striking Mr. Stoddard at the Jail**
**(Against Defendant Gilliam, Individually)**

364.

Plaintiff incorporates by reference all the above allegations as if fully set forth herein.

Page **87** of

365.

Mr. Stoddard had a constitutional right to be free from the unlawful and excessive use of force, pursuant to the Fourth and Fourteenth Amendments.

366.

In doing the acts or omissions complained of above, Defendant Gilliam acted under the color of law to deprive Mr. Stoddard of his constitutionally protected rights, including, but not limited to:

a. The right to be free from unreasonable searches and seizures, as guaranteed by the Fourth Amendment to the United States Constitution;

b. The right not to be deprived of life or liberty without due process of law, as guaranteed by the Fourteenth Amendment to the United States Constitution;

c. The right to be free from the use of excessive force by state officers and actors, which is guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution; and

d. The right to be free from deprivation of liberty and injury without substantive due process. The right to be free from unlawful, reckless, deliberately indifferent, and conscience-shocking deadly and/or excessive force under the United States Constitution and its Amendments.

367.

Defendant Gilliam, under color of state law, intentionally, unlawfully, and unreasonably seized Mr. Stoddard by means of excessive force.

368.

Force decisions must reasonably consider the officer's objective for using force; the Officer's reasonable perceptions of the subject's actions or behaviors the officer is attempting to stop, thwart, or control; the foreseeable risks of injuries or harm to the subject resulting from the force to be used and the foreseeable secondary risks of injury.

369.

Defendant Gilliam did not take reasonable preventative measures and instead deployed an unreasonable and excessive amount of force.

370.

Defendant Gilliam's actively participated in excessive force in violation of Mr. Stoddard's Fourth and Fourteenth Amendment Rights when he struck, punched, kicked, and otherwise physically assaulted Mr. Stoddard while Mr. Stoddard was handcuffed, shackled, and restrained by multiple officers as well as a restrain chair.

371.

The force used by Defendant Gilliam amounted to unlawful force that

carried with it a high risk of causing serious bodily harm to Mr. Stoddard, and the use of such force was unnecessary and unreasonable under the circumstances then and there existing.

372.

Defendant Gilliam's use of force was excessive and unreasonable because, among other things

e. Mr. Stoddard was handcuffed with his hands restrained behind his back,

f. Mr. Stoddard's feet were shackled together by metal shackles,

g. Mr. Stoddard was being restrained and held down by several officers,

h. Mr. Stoddard was being placed in a restraint chair,

i. Mr. Stoddard had already been searched for weapons and was found to possess none,

j. Mr. Stoddard was arrested for trespassing in someone's house by simply walking through the front door,

k. There was no basis for using this type of force against Mr. Stoddard, and

l. The force used against Mr. Stoddard was gratuitous.

373.

Defendant Gilliam acted objectively unreasonably in applying

Page **90** of

excessive force upon Mr. Stoddard because he did not have probable cause to believe that Mr. Stoddard posed a threat of serious harm to Defendant Gilliam himself or others as evidenced by the fact that Mr. Stoddard was handcuffed, shackled, and otherwise restrained.

<div align="center">374.</div>

As indicated above, the totality of the circumstances did not justify the excessive force exercised by Defendant Gilliam.

<div align="center">375.</div>

The totality of circumstances reveals that Defendant Gilliam's beating of Mr. Stoddard was unreasonable, unnecessary, an excessive use- of-force, and violated Mr. Stoddard's constitutional rights.

<div align="center">376.</div>

Defendant Gilliam's actions were under color of law and deprived Mr. Stoddard of his rights secured under the Constitution. These actions— done with actual malice—caused Mr. Stoddard physical and mental pain and suffering and wrongful death, among other things.

<div align="center">377.</div>

Defendant Gilliam's conduct caused Mr. Stoddard's injuries.

<div align="center">378.</div>

It was clearly established under 6th Circuit precedent at the time of the

incident that Defendant Gilliam's use of force was unconstitutional as indicated by cases such as *McDowell v. Rogers*, 863 F.2d 1302, 1307 (6th Cir.1988), *Phelps v. Coy*, 286 F.3d 295, 301 (6th Cir.2002), *Schreiber v. Moe*, 596 F.3d 323 (6th Cir. 2010), and more.

<center>379.</center>

Defendant Gilliam is not entitled to qualified immunity for his conduct because his excessive force violated the basic legal principle that "striking a neutralized suspect who is secured by handcuffs is objectively unreasonable" *Schreiber v. Moe*, 596 F.3d 323, 332 (6th Cir. 2010)

<center>380.</center>

Defendant Gilliam is not entitled to qualified immunity for his conduct because it was so egregious that everyone would know it violated the Constitution.

<center>381.</center>

As a result of the wrongful conduct described above, Plaintiff and/or Mr. Stoddard suffered from general and special damages, including but not limited to, physical and mental pain and suffering, wrongful death, loss of consortium, lost wages, lost earning capacity, medical bills, funeral/end of life expenses, and loss of enjoyment of life.

<center>382.</center>

Defendant Gilliam acted intentionally, maliciously, and/or recklessly and in disregard of Mr. Stoddard's health, safety, and constitutional rights when he struck Mr. Stoddard while restrained. This conduct shocks the conscience and is fundamentally offensive in a civilized society, so as to justify the imposition of punitive damages on Defendant Gilliam. This is supported by the above facts and allegations that show Defendant Gilliam's intentional, malicious, willful, wanton, and/or reckless beating of Mr. Stoddard.

<center>383.</center>

Plaintiff is entitled to an award of attorneys' fees, costs, and expenses under 42 U.S.C. § 1988.

<center>

**COUNT NINE**
**VIOLATION OF FEDERAL RIGHTS PURSUANT TO 42 U.S.C. 1983**
**Excessive Force in Violation of the Fourth and Fourteenth Amendment;**
**Striking Mr. Stoddard at the Jail**
**(Against Defendant King, Individually)**

</center>

<center>384.</center>

Plaintiff incorporates by reference all the above allegations as if fully set forth herein.

<center>385.</center>

Mr. Stoddard had a constitutional right to be free from the unlawful and excessive use of force, pursuant to the Fourth and Fourteenth Amendments.

<center>Page **93** of</center>

386.

In doing the acts or omissions complained of above, Defendant King acted under the color of law to deprive Mr. Stoddard of his constitutionally protected rights, including, but not limited to:

a. The right to be free from unreasonable searches and seizures, as guaranteed by the Fourth Amendment to the United States Constitution;

b. The right not to be deprived of life or liberty without due process of law, as guaranteed by the Fourteenth Amendment to the United States Constitution;

c. The right to be free from the use of excessive force by state officers and actors, which is guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution; and

d. The right to be free from deprivation of liberty and injury without substantive due process. The right to be free from unlawful, reckless, deliberately indifferent, and conscience-shocking deadly and/or excessive force under the United States Constitution and its Amendments.

387.

Defendant King, under color of state law, intentionally, unlawfully, and unreasonably seized Mr. Stoddard by means of excessive force.

388.

Force decisions must reasonably consider the officer's objective for using

force; the Officer's reasonable perceptions of the subject's actions or behaviors the officer is attempting to stop, thwart, or control; the foreseeable risks of injuries or harm to the subject resulting from the force to be used and the foreseeable secondary risks of injury.

<div align="center">389.</div>

Defendant King did not take reasonable preventative measures and instead deployed an unreasonable and excessive amount of force.

<div align="center">390.</div>

Defendant King actively participated in excessive force in violation of Mr. Stoddard's Fourth and Fourteenth Amendment Rights when he struck, punched, kicked, and otherwise physically assaulted Mr. Stoddard while Mr. Stoddard was handcuffed, shackled, and restrained by multiple officers as well as a restrain chair.

<div align="center">391.</div>

The force used by Defendant King amounted to unlawful force that carried with it a high risk of causing serious bodily harm to Mr. Stoddard, and the use of such force was unnecessary and unreasonable under the circumstances then and there existing.

<div align="center">392.</div>

Defendant King's use of force was excessive and unreasonable because, among other things

a. Mr. Stoddard was handcuffed with his hands restrained behind his back,

b. Mr. Stoddard's feet were shackled together by metal shackles,

c. Mr. Stoddard was being restrained and held down by several officers,

d. Mr. Stoddard was being placed in a restraint chair,

e. Mr. Stoddard had already been searched for weapons and was found to possess none,

f. Mr. Stoddard was arrested for trespassing in someone's house by simply walking through the front door,

g. There was no basis for using this type of force against Mr. Stoddard, and

h. The force used against Mr. Stoddard was gratuitous.

393.

Defendant King acted objectively unreasonably in applying excessive force upon Mr. Stoddard because he did not have probable cause to believe that Mr. Stoddard posed a threat of serious harm to Defendant King himself or others as evidenced by the fact that Mr. Stoddard was handcuffed, shackled, and otherwise restrained.

394.

As indicated above, the totality of the circumstances did not justify the excessive force exercised by Defendant King.

395.

The totality of circumstances reveals that Defendant King's beating of Mr. Stoddard was unreasonable, unnecessary, an excessive use- of-force, and violated Mr. Stoddard's constitutional rights.

396.

Defendant King's actions were under color of law and deprived Mr. Stoddard of his rights secured under the Constitution. These actions— done with actual malice—caused Mr. Stoddard physical and mental pain and suffering and wrongful death, among other things.

397.

Defendant King's conduct caused Mr. Stoddard's injuries.

398.

It was clearly established under 6th Circuit precedent at the time of the incident that Defendant King's use of force was unconstitutional as indicated by cases such as *McDowell v. Rogers*, 863 F.2d 1302, 1307 (6th Cir.1988), *Phelps v. Coy*, 286 F.3d 295, 301 (6th Cir.2002), *Schreiber v. Moe*, 596 F.3d 323 (6th Cir. 2010), and more.

399.

Defendant King is not entitled to qualified immunity for his conduct because his excessive force violated the basic legal principle that "striking a neutralized suspect who is secured by handcuffs is objectively unreasonable" *Schreiber v.*

*Moe*, 596 F.3d 323, 332 (6th Cir. 2010)

400.

Defendant King is not entitled to qualified immunity for his conduct because it was so egregious that everyone would know it violated the Constitution.

401.

As a result of the wrongful conduct described above, Plaintiff and/or Mr. Stoddard suffered from general and special damages, including but not limited to, physical and mental pain and suffering, wrongful death, loss of consortium, lost wages, lost earning capacity, medical bills, funeral/end of life expenses, and loss of enjoyment of life.

402.

Defendant King acted intentionally, maliciously, and/or recklessly and in disregard of Mr. Stoddard's health, safety, and constitutional rights when he struck Mr. Stoddard while restrained. This conduct shocks the conscience and is fundamentally offensive in a civilized society, so as to justify the imposition of punitive damages on Defendant King. This is supported by the above facts and allegations that show Defendant King's intentional, malicious, willful, wanton, and/or reckless beating of Mr. Stoddard.

403.

Plaintiff is entitled to an award of attorneys' fees, costs, and expenses under

42 U.S.C. § 1988.

## COUNT TEN
## VIOLATION OF FEDERAL RIGHTS PURSUANT TO 42 U.S.C. 1983
## Excessive Force in Violation of the Fourth and Fourteenth Amendment;
## Tasing Mr. Stoddard at the Jail
## (Against Defendant King, Individually)

404.

Plaintiff incorporates by reference all the above allegations as if fully set forth herein.

405.

Mr. Stoddard had a constitutional right to be free from the unlawful and excessive use of force, pursuant to the Fourth and Fourteenth Amendments.

In doing the acts or omissions complained of above, Defendant King acted under the color of law to deprive Mr. Stoddard of his constitutionally protected rights, including, but not limited to:

a. The right to be free from unreasonable searches and seizures, as guaranteed by the Fourth Amendment to the United States Constitution;

b. The right not to be deprived of life or liberty without due process of law, as guaranteed by the Fourteenth Amendment to the United States Constitution;

c. The right to be free from the use of excessive force by state officers and actors, which is guaranteed by the Fourth and Fourteenth Amendments to the United

States Constitution; and

d. The right to be free from deprivation of liberty and injury without substantive due process. The right to be free from unlawful, reckless, deliberately indifferent, and conscience-shocking deadly and/or excessive force under the United States Constitution and its Amendments.

406.

Defendant King, under color of state law, intentionally, unlawfully, and unreasonably seized Mr. Stoddard by means of excessive force.

407.

Force decisions must reasonably consider the officer's objective for using force; the Officer's reasonable perceptions of the subject's actions or behaviors the officer is attempting to stop, thwart, or control; the foreseeable risks of injuries or harm to the subject resulting from the force to be used and the foreseeable secondary risks of injury.

408.

Defendant King did not take reasonable preventative measures and instead deployed an unreasonable and excessive amount of force.

409.

Defendant King actively participated in excessive force in violation of Mr. Stoddard's Fourth and Fourteenth Amendment Rights when he tased Mr. Stoddard

while Mr. Stoddard was handcuffed, shackled, and restrained by multiple officers as well as a restraint chair.

410.

The force used by Defendant King amounted to unlawful force that carried with it a high risk of causing serious bodily harm to Mr. Stoddard, and the use of such force was unnecessary and unreasonable under the circumstances then and there existing.

411.

Defendant King's use of force was excessive and unreasonable because, among other things

a. Mr. Stoddard was handcuffed with his hands restrained behind his back,

b. Mr. Stoddard's feet were shackled together by metal shackles,

c. Mr. Stoddard was being restrained and held down by several officers,

d. Mr. Stoddard was being placed in a restraint chair,

e. Mr. Stoddard had already been searched for weapons and was found to possess none,

f. Mr. Stoddard was arrested for trespassing in someone's house by simply walking through the front door,

g. There was no basis for using this type of force against Mr. Stoddard, and

h. The force used against Mr. Stoddard was gratuitous.

412.

Defendant King acted objectively unreasonably in applying excessive force upon Mr. Stoddard because he did not have probable cause to believe that Mr. Stoddard posed a threat of serious harm to Defendant King himself or others as evidenced by the fact that Mr. Stoddard was handcuffed, shackled, and otherwise restrained.

413.

As indicated above, the totality of the circumstances did not justify the excessive force exercised by Defendant King.

414.

The totality of circumstances reveals that Defendant King's tasing of Mr. Stoddard was unreasonable, unnecessary, an excessive use- of-force, and violated Mr. Stoddard's constitutional rights.

415.

Defendant King's actions were under color of law and deprived Mr. Stoddard of his rights secured under the Constitution. These actions— done with actual malice—caused Mr. Stoddard physical and mental pain and suffering and wrongful death, among other things.

416.

Defendant King's conduct caused Mr. Stoddard's injuries.

417.

It was clearly established under 6th Circuit precedent at the time of the incident that Defendant King's use of force was unconstitutional as indicated by cases such as *McDowell v. Rogers*, 863 F.2d 1302, 1307 (6th Cir.1988), *Phelps v. Coy*, 286 F.3d 295, 301 (6th Cir.2002), *Schreiber v. Moe*, 596 F.3d 323 (6th Cir. 2010), and more.

418.

Defendant King is not entitled to qualified immunity for his conduct because it was so egregious that everyone would know it violated the Constitution.

419.

As a result of the wrongful conduct described above, Plaintiff and/or Mr. Stoddard suffered from general and special damages, including but not limited to, physical and mental pain and suffering, wrongful death, loss of consortium, lost wages, lost earning capacity, medical bills, funeral/end of life expenses, and loss of enjoyment of life.

420.

Defendant King acted intentionally, maliciously, and/or recklessly and in disregard of Mr. Stoddard's health, safety, and constitutional rights when he tased Mr. Stoddard while restrained. This conduct shocks the conscience and is fundamentally offensive in a civilized society, so as to justify the imposition of

punitive damages on Defendant King. This is supported by the above facts and allegations that show Defendant King's intentional, malicious, willful, wanton, and/or reckless tasing of Mr. Stoddard.

421.

Plaintiff is entitled to an award of attorneys' fees, costs, and expenses under 42 U.S.C. § 1988.

**COUNT ELEVEN**
**VIOLATION OF FEDERAL RIGHTS PURSUANT TO 42 U.S.C. 1983**
**Supervisory Liability, personal participation; Supervision of Defendant**
**King's Excessive Force by way of Tasing Mr. Stoddard at the Jail**
**(Against Defendant Amyx, Individually)**

422.

Plaintiff incorporates by reference all the above allegations as if fully set forth herein.

423.

Mr. Stoddard had a constitutional right to be free from the unlawful and excessive use of force, pursuant to the Fourth and Fourteenth Amendments.

In doing the acts or omissions complained of above, Defendant Amyx acted under the color of law to deprive Mr. Stoddard of his constitutionally protected rights, including, but not limited to:

a. The right to be free from unreasonable searches and seizures, as guaranteed by

Page **104** of

the Fourth Amendment to the United States Constitution;

b. The right not to be deprived of life or liberty without due process of law, as guaranteed by the Fourteenth Amendment to the United States Constitution;

c. The right to be free from the use of excessive force by state officers and actors, which is guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution; and

d. The right to be free from deprivation of liberty and injury without substantive due process. The right to be free from unlawful, reckless, deliberately indifferent, and conscience-shocking deadly and/or excessive force under the United States Constitution and its Amendments.

## 424.

Defendant Amyx, under color of state law, intentionally, unlawfully, and unreasonably seized Mr. Stoddard by means of excessive force.

## 425.

Force decisions must reasonably consider the officer's objective for using force; the Officer's reasonable perceptions of the subject's actions or behaviors the officer is attempting to stop, thwart, or control; the foreseeable risks of injuries or harm to the subject resulting from the force to be used and the foreseeable secondary risks of injury.

## 426.

Defendant Amyx did not take reasonable preventative measures and instead deployed an unreasonable and excessive amount of force.

427.

Defendant Amyx supervised Defendant King in excessive force in violation of Mr. Stoddard's Fourth and Fourteenth Amendment Rights when supervised Defendant King's deployment of the taser onto Mr. Stoddard, while Mr. Stoddard was handcuffed, shackled, and otherwise restrained.

428.

The force used by Defendant King amounted to unlawful force that carried with it a high risk of causing serious bodily harm to Mr. Stoddard, and the use of such force was unnecessary and unreasonable under the circumstances then and there existing.

429.

Defendant King's use of force and Defendant Amyx' supervision thereof were excessive and unreasonable because, among other things

a.  Mr. Stoddard was handcuffed with his hands restrained behind his back,

b.  Mr. Stoddard's feet were shackled together by metal shackles,

c.  Mr. Stoddard was being restrained and held down by several officers,

d.  Mr. Stoddard was being placed in a restraint chair,

e.  Mr. Stoddard had already been searched for weapons and was found to possess

none,

f. Mr. Stoddard was arrested for trespassing in someone's house by simply walking through the front door,

g. There was no basis for using this type of force against Mr. Stoddard, and

h. The force used against Mr. Stoddard was gratuitous.

430.

Defendant Amyx acted objectively unreasonably in supervising Defendant King's excessive force upon Mr. Stoddard because he did not have probable cause to believe that Mr. Stoddard posed a threat of serious harm to Defendant Amyx himself or others as evidenced by the fact that Mr. Stoddard was handcuffed, shackled, and otherwise restrained.

431.

As indicated above, the totality of the circumstances did not justify the excessive force exercised by Defendant King and supervised by Defendant Amyx.

432.

The totality of circumstances reveals that Defendant King's tasing of Mr. Stoddard and Defendant Amyx's supervision thereof were unreasonable, unnecessary, an excessive use- of-force, and violated Mr. Stoddard's constitutional rights.

433.

Defendant Amyx's actions were under color of law and deprived Mr. Stoddard of his rights secured under the Constitution. These actions— done with actual malice—caused Mr. Stoddard physical and mental pain and suffering and wrongful death, among other things.

434.

Defendant Amyx's conduct caused Mr. Stoddard's injuries.

435.

Defendant Amyx is not entitled to qualified immunity for his conduct because his supervision of the excessive force violated the basic legal principle that "striking a neutralized suspect who is secured by handcuffs is objectively unreasonable" *Schreiber v. Moe*, 596 F.3d 323, 332 (6th Cir. 2010).

436.

Defendant Amyx is not entitled to qualified immunity for his conduct because it was so egregious that everyone would know it violated the Constitution.

437.

As a result of the wrongful conduct described above, Plaintiff and/or Mr. Stoddard suffered from general and special damages, including but not limited to, physical and mental pain and suffering, wrongful death, loss of consortium, lost wages, lost earning capacity, medical bills, funeral/end of life expenses, and loss of enjoyment of life.

438.

Defendant Amyx acted intentionally, maliciously, and/or recklessly and in disregard of Mr. Stoddard's health, safety, and constitutional rights when he supervised Defendant King's tasing of Mr. Stoddard while restrained. This conduct shocks the conscience and is fundamentally offensive in a civilized society, so as to justify the imposition of punitive damages on Defendant Amyx. This is supported by the above facts and allegations that show Defendant Amyx's intentional, malicious, willful, wanton, and/or reckless supervision of the tasing of Mr. Stoddard.

439.

Plaintiff is entitled to an award of attorneys' fees, costs, and expenses under 42 U.S.C. § 1988.

## COUNT TWELVE
## VIOLATION OF FEDERAL RIGHTS PURSUANT TO 42 U.S.C. 1983
### Excessive Force in Violation of the Fourth and Fourteenth Amendment;
### Striking Mr. Stoddard at the Jail
### (Against Defendant Amyx, Individually)

440.

Plaintiff incorporates by reference all the above allegations as if fully set forth herein.

441.

Mr. Stoddard had a constitutional right to be free from the unlawful and

Page **109** of

excessive use of force, pursuant to the Fourth and Fourteenth Amendments.

442.

In doing the acts or omissions complained of above, Defendant Amyx acted under the color of law to deprive Mr. Stoddard of his constitutionally protected rights, including, but not limited to:

a. The right to be free from unreasonable searches and seizures, as guaranteed by the Fourth Amendment to the United States Constitution;

b. The right not to be deprived of life or liberty without due process of law, as guaranteed by the Fourteenth Amendment to the United States Constitution;

c. The right to be free from the use of excessive force by state officers and actors, which is guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution; and

d. The right to be free from deprivation of liberty and injury without substantive due process. The right to be free from unlawful, reckless, deliberately indifferent, and conscience-shocking deadly and/or excessive force under the United States Constitution and its Amendments.

443.

Defendant Amyx, under color of state law, intentionally, unlawfully, and unreasonably seized Mr. Stoddard by means of excessive force.

444.

Page **110** of

Force decisions must reasonably consider the officer's objective for using force; the Officer's reasonable perceptions of the subject's actions or behaviors the officer is attempting to stop, thwart, or control; the foreseeable risks of injuries or harm to the subject resulting from the force to be used and the foreseeable secondary risks of injury.

445.

Defendant Amyx did not take reasonable preventative measures and instead deployed an unreasonable and excessive amount of force.

446.

Defendant Amyx's actively participated in excessive force in violation of Mr. Stoddard's Fourth and Fourteenth Amendment Rights when he struck, punched, kicked, and otherwise physically assaulted Mr. Stoddard while Mr. Stoddard was handcuffed, shackled, and restrained by multiple officers as well as a restrain chair.

447.

The force used by Defendant Amyx amounted to unlawful force that carried with it a high risk of causing serious bodily harm to Mr. Stoddard, and the use of such force was unnecessary and unreasonable under the circumstances then and there existing.

448.

Defendant Amyx's use of force was excessive and unreasonable because, among other things

    a.  Mr. Stoddard was handcuffed with his hands restrained behind his back,

    b.  Mr. Stoddard's feet were shackled together by metal shackles,

    c.  Mr. Stoddard was being restrained and held down by several officers,

    d.  Mr. Stoddard was being placed in a restraint chair,

    e.  Mr. Stoddard had already been searched for weapons and was found to possess none,

    f.  Mr. Stoddard was arrested for trespassing in someone's house by simply walking through the front door,

    g.  There was no basis for using this type of force against Mr. Stoddard, and

    h.  The force used against Mr. Stoddard was gratuitous.

## 449.

Defendant Amyx acted objectively unreasonably in applying excessive force upon Mr. Stoddard because he did not have probable cause to believe that Mr. Stoddard posed a threat of serious harm to Defendant Amyx himself or others as evidenced by the fact that Mr. Stoddard was handcuffed, shackled, and otherwise restrained.

## 450.

As indicated above, the totality of the circumstances did not justify the

excessive force exercised by Defendant Amyx.

451.

The totality of circumstances reveals that Defendant Amyx's beating of Mr. Stoddard was unreasonable, unnecessary, an excessive use- of-force, and violated Mr. Stoddard's constitutional rights.

452.

Defendant Amyx's actions were under color of law and deprived Mr. Stoddard of his rights secured under the Constitution. These actions— done with actual malice—caused Mr. Stoddard physical and mental pain and suffering and wrongful death, among other things.

453.

Defendant Amyx's conduct caused Mr. Stoddard's injuries.

454.

It was clearly established under 6th Circuit precedent at the time of the incident that Defendant Amyx's use of force was unconstitutional as indicated by cases such as *McDowell v. Rogers*, 863 F.2d 1302, 1307 (6th Cir.1988), *Phelps v. Coy*, 286 F.3d 295, 301 (6th Cir.2002), *Schreiber v. Moe*, 596 F.3d 323 (6th Cir. 2010), and more.

455.

Defendant Amyx is not entitled to qualified immunity for his conduct

because his excessive force violated the basic legal principle that "striking a neutralized suspect who is secured by handcuffs is objectively unreasonable" *Schreiber v. Moe*, 596 F.3d 323, 332 (6th Cir. 2010)

456.

Defendant Amyx is not entitled to qualified immunity for his conduct because it was so egregious that everyone would know it violated the Constitution.

457.

As a result of the wrongful conduct described above, Plaintiff and/or Mr. Stoddard suffered from general and special damages, including but not limited to, physical and mental pain and suffering, wrongful death, loss of consortium, lost wages, lost earning capacity, medical bills, funeral/end of life expenses, and loss of enjoyment of life.

458.

Defendant Amyx acted intentionally, maliciously, and/or recklessly and in disregard of Mr. Stoddard's health, safety, and constitutional rights when he struck Mr. Stoddard while restrained. This conduct shocks the conscience and is fundamentally offensive in a civilized society, so as to justify the imposition of punitive damages on Defendant Amyx. This is supported by the above facts and allegations that show Defendant Amyx's intentional, malicious, willful, wanton, and/or reckless beating of Mr. Stoddard.

459.

Plaintiff is entitled to an award of attorneys' fees, costs, and expenses under 42 U.S.C. § 1988.

**COUNT THIRTEEN**
**VIOLATION OF FEDERAL RIGHTS PURSUANT TO 42 U.S.C. 1983**
**Excessive Force in Violation of the Fourth and Fourteenth Amendment;**
**Striking Mr. Stoddard at the Jail**
**(Against Defendant Cunningham, Individually)**

460.

Plaintiff incorporates by reference all the above allegations as if fully set forth herein.

461.

Mr. Stoddard had a constitutional right to be free from the unlawful and excessive use of force, pursuant to the Fourth and Fourteenth Amendments.

462.

In doing the acts or omissions complained of above, Defendant Cunningham acted under the color of law to deprive Mr. Stoddard of his constitutionally protected rights, including, but not limited to:

a. The right to be free from unreasonable searches and seizures, as guaranteed by the Fourth Amendment to the United States Constitution;

b. The right not to be deprived of life or liberty without due process of law, as guaranteed by the Fourteenth Amendment to the United States Constitution;

c.  The right to be free from the use of excessive force by state officers and actors, which is guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution; and

d.  The right to be free from deprivation of liberty and injury without substantive due process. The right to be free from unlawful, reckless, deliberately indifferent, and conscience-shocking deadly and/or excessive force under the United States Constitution and its Amendments.

463.

Defendant Cunningham, under color of state law, intentionally, unlawfully, and unreasonably seized Mr. Stoddard by means of excessive force.

464.

Force decisions must reasonably consider the officer's objective for using force; the Officer's reasonable perceptions of the subject's actions or behaviors the officer is attempting to stop, thwart, or control; the foreseeable risks of injuries or harm to the subject resulting from the force to be used and the foreseeable secondary risks of injury.

465.

Defendant Cunningham did not take reasonable preventative measures and instead deployed an unreasonable and excessive amount of force.

466.

Defendant Cunningham actively participated in excessive force in violation of Mr. Stoddard's Fourth and Fourteenth Amendment Rights when he struck, punched, kicked, and otherwise physically assaulted Mr. Stoddard while Mr. Stoddard was handcuffed, shackled, and restrained by multiple officers as well as a restraint chair.

467.

The force used by Defendant Cunningham amounted to unlawful force that carried with it a high risk of causing serious bodily harm to Mr. Stoddard, and the use of such force was unnecessary and unreasonable under the circumstances then and there existing.

468.

Defendant Cunnigham's use of force was excessive and unreasonable because, among other things

a. Mr. Stoddard was handcuffed with his hands restrained behind his back,

b. Mr. Stoddard's feet were shackled together by metal shackles,

c. Mr. Stoddard was being restrained and held down by several officers,

d. Mr. Stoddard was being placed in a restraint chair,

e. Mr. Stoddard had already been searched for weapons and was found to possess none,

f. Mr. Stoddard was arrested for trespassing in someone's house by simply

walking through the front door,

g.  There was no basis for using this type of force against Mr. Stoddard, and

h.  The force used against Mr. Stoddard was gratuitous.

469.

Defendant Cunningham acted objectively unreasonably in applying excessive force upon Mr. Stoddard because he did not have probable cause to believe that Mr. Stoddard posed a threat of serious harm to Defendant Cunningham himself or others as evidenced by the fact that Mr. Stoddard was handcuffed, shackled, and otherwise restrained.

470.

As indicated above, the totality of the circumstances did not justify the excessive force exercised by Defendant Cunningham.

471.

The totality of circumstances reveals that Defendant Cunningham's beating of Mr. Stoddard was unreasonable, unnecessary, an excessive use- of-force, and violated Mr. Stoddard's constitutional rights.

472.

Defendant Cunningham's actions were under color of law and deprived Mr. Stoddard of his rights secured under the Constitution. These actions— done with actual malice—caused Mr. Stoddard physical and mental pain and suffering and

wrongful death, among other things.

473.

Defendant Cunningham's conduct caused Mr. Stoddard's injuries.

474.

It was clearly established under 6th Circuit precedent at the time of the incident that Defendant Cunningham's use of force was unconstitutional as indicated by cases such as *McDowell v. Rogers*, 863 F.2d 1302, 1307 (6th Cir.1988), *Phelps v. Coy*, 286 F.3d 295, 301 (6th Cir.2002), *Schreiber v. Moe*, 596 F.3d 323 (6th Cir. 2010), and more.

475.

Defendant Cunningham is not entitled to qualified immunity for his conduct because his excessive force violated the basic legal principle that "striking a neutralized suspect who is secured by handcuffs is objectively unreasonable" *Schreiber v. Moe*, 596 F.3d 323, 332 (6th Cir. 2010)

476.

Defendant Cunningham is not entitled to qualified immunity for his conduct because it was so egregious that everyone would know it violated the Constitution.

477.

As a result of the wrongful conduct described above, Plaintiff and/or Mr. Stoddard suffered from general and special damages, including but not limited to,

physical and mental pain and suffering, wrongful death, loss of consortium, lost wages, lost earning capacity, medical bills, funeral/end of life expenses, and loss of enjoyment of life.

478.

Defendant Cunningham acted intentionally, maliciously, and/or recklessly and in disregard of Mr. Stoddard's health, safety, and constitutional rights when he struck Mr. Stoddard while restrained. This conduct shocks the conscience and is fundamentally offensive in a civilized society, so as to justify the imposition of punitive damages on Defendant Cunningham. This is supported by the above facts and allegations that show Defendant Cunningham's intentional, malicious, willful, wanton, and/or reckless beating of Mr. Stoddard.

479.

Plaintiff is entitled to an award of attorneys' fees, costs, and expenses under 42 U.S.C. § 1988.

**COUNT FOURTEEN**
**VIOLATION OF FEDERAL RIGHTS PURSUANT TO 42 U.S.C. 1983**
**Excessive Force in Violation of the Fourth and Fourteenth Amendment;**
**Striking Mr. Stoddard at the Jail;**
**(Against Defendant Harer, Individually)**

480.

Plaintiff incorporates by reference all the above allegations as if fully set forth herein.

Page **120** of

481.

Mr. Stoddard had a constitutional right to be free from the unlawful and excessive use of force, pursuant to the Fourth and Fourteenth Amendments.

482.

In doing the acts or omissions complained of above, Defendant Harer acted under the color of law to deprive Mr. Stoddard of his constitutionally protected rights, including, but not limited to:

a. The right to be free from unreasonable searches and seizures, as guaranteed by the Fourth Amendment to the United States Constitution;

b. The right not to be deprived of life or liberty without due process of law, as guaranteed by the Fourteenth Amendment to the United States Constitution;

c. The right to be free from the use of excessive force by state officers and actors, which is guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution; and

d. The right to be free from deprivation of liberty and injury without substantive due process. The right to be free from unlawful, reckless, deliberately indifferent, and conscience-shocking deadly and/or excessive force under the United States Constitution and its Amendments.

483.

Defendant Harer, under color of state law, intentionally, unlawfully, and

unreasonably seized Mr. Stoddard by means of excessive force.

484.

Force decisions must reasonably consider the officer's objective for using force; the Officer's reasonable perceptions of the subject's actions or behaviors the officer is attempting to stop, thwart, or control; the foreseeable risks of injuries or harm to the subject resulting from the force to be used and the foreseeable secondary risks of injury.

485.

Defendant Harer did not take reasonable preventative measures and instead deployed an unreasonable and excessive amount of force.

486.

Defendant Harer's actively participated in excessive force in violation of Mr. Stoddard's Fourth and Fourteenth Amendment Rights when he struck, punched, kicked, and otherwise physically assaulted Mr. Stoddard while Mr. Stoddard was handcuffed, shackled, and restrained by multiple officers as well as a restrain chair.

487.

The force used by Defendant Harer amounted to unlawful force that carried with it a high risk of causing serious bodily harm to Mr. Stoddard, and the use of such force was unnecessary and unreasonable under the circumstances then and there existing.

488.

Defendant Harer's use of force was excessive and unreasonable because, among other things

   a. Mr. Stoddard was handcuffed with his hands restrained behind his back,

   b. Mr. Stoddard's feet were shackled together by metal shackles,

   c. Mr. Stoddard was being restrained and held down by several officers,

   d. Mr. Stoddard was being placed in a restraint chair,

   e. Mr. Stoddard had already been searched for weapons and was found to possess none,

   f. Mr. Stoddard was arrested for trespassing in someone's house by simply walking through the front door,

   g. There was no basis for using this type of force against Mr. Stoddard, and

   h. The force used against Mr. Stoddard was gratuitous.

489.

Defendant Harer acted objectively unreasonably in applying excessive force upon Mr. Stoddard because he did not have probable cause to believe that Mr. Stoddard posed a threat of serious harm to Defendant Harer himself or others as evidenced by the fact that Mr. Stoddard was handcuffed, shackled, and otherwise restrained.

490.

As indicated above, the totality of the circumstances did not justify the excessive force exercised by Defendant Harer.

491.

The totality of circumstances reveals that Defendant Harer's beating of Mr. Stoddard was unreasonable, unnecessary, an excessive use- of-force, and violated Mr. Stoddard's constitutional rights.

492.

Defendant Harer's actions were under color of law and deprived Mr. Stoddard of his rights secured under the Constitution. These actions— done with actual malice—caused Mr. Stoddard physical and mental pain and suffering and wrongful death, among other things.

493.

Defendant Harer's conduct caused Mr. Stoddard's injuries.

494.

It was clearly established under 6th Circuit precedent at the time of the incident that Defendant Harer's use of force was unconstitutional as indicated by cases such as *McDowell v. Rogers*, 863 F.2d 1302, 1307 (6th Cir.1988), *Phelps v. Coy*, 286 F.3d 295, 301 (6th Cir.2002), *Schreiber v. Moe*, 596 F.3d 323 (6th Cir. 2010), and more.

495.

Defendant Harer is not entitled to qualified immunity for his conduct because his excessive force violated the basic legal principle that "striking a neutralized suspect who is secured by handcuffs is objectively unreasonable" *Schreiber v. Moe*, 596 F.3d 323, 332 (6th Cir. 2010)

496.

Defendant Harer is not entitled to qualified immunity for his conduct because it was so egregious that everyone would know it violated the Constitution.

497.

As a result of the wrongful conduct described above, Plaintiff and/or Mr. Stoddard suffered from general and special damages, including but not limited to, physical and mental pain and suffering, wrongful death, loss of consortium, lost wages, lost earning capacity, medical bills, funeral/end of life expenses, and loss of enjoyment of life.

498.

Defendant Harer acted intentionally, maliciously, and/or recklessly and in disregard of Mr. Stoddard's health, safety, and constitutional rights when he struck Mr. Stoddard while restrained. This conduct shocks the conscience and is fundamentally offensive in a civilized society, so as to justify the imposition of punitive damages on Defendant Harer. This is supported by the above facts and allegations that show Defendant Harer's intentional, malicious, willful, wanton,

and/or reckless beating of Mr. Stoddard.

499.

Plaintiff is entitled to an award of attorneys' fees, costs, and expenses under 42 U.S.C. § 1988.

## COUNT FIFTEEN
## VIOLATION OF FEDERAL RIGHTS PURSUANT TO 42 U.S.C. 1983
### Excessive Force in Violation of the Fourth and Fourteenth Amendment;
### Striking Mr. Stoddard at the Jail;
### (Against Defendant Good, Individually)

500.

Plaintiff incorporates by reference all the above allegations as if fully set forth herein.

501.

In doing the acts or omissions complained of above, Defendant Good acted under the color of law to deprive Mr. Stoddard of his constitutionally protected rights, including, but not limited to:

a. The right to be free from unreasonable searches and seizures, as guaranteed by the Fourth Amendment to the United States Constitution;

b. The right not to be deprived of life or liberty without due process of law, as guaranteed by the Fourteenth Amendment to the United States Constitution;

c. The right to be free from the use of excessive force by state officers and actors, which is guaranteed by the Fourth and Fourteenth Amendments to the United

Page **126** of

States Constitution; and

d.  The right to be free from deprivation of liberty and injury without substantive due process. The right to be free from unlawful, reckless, deliberately indifferent, and conscience-shocking deadly and/or excessive force under the United States Constitution and its Amendments.

502.

Defendant Good, under color of state law, intentionally, unlawfully, and unreasonably seized Mr. Stoddard by means of excessive force.

503.

Force decisions must reasonably consider the officer's objective for using force; the Officer's reasonable perceptions of the subject's actions or behaviors the officer is attempting to stop, thwart, or control; the foreseeable risks of injuries or harm to the subject resulting from the force to be used and the foreseeable secondary risks of injury.

504.

Defendant Good did not take reasonable preventative measures and instead deployed an unreasonable and excessive amount of force.

505.

Defendant Good actively participated in excessive force in violation of Mr. Stoddard's Fourth and Fourteenth Amendment Rights when he struck, punched,

kicked, and otherwise physically assaulted Mr. Stoddard while Mr. Stoddard was handcuffed, shackled, and restrained by multiple officers as well as a restraint chair.

507.

The force used by Defendant Good amounted to unlawful force that carried with it a high risk of causing serious bodily harm to Mr. Stoddard, and the use of such force was unnecessary and unreasonable under the circumstances then and there existing.

507.

Defendant Good's use of force was excessive and unreasonable because, among other things

a. Mr. Stoddard was handcuffed with his hands restrained behind his back,

b. Mr. Stoddard's feet were shackled together by metal shackles,

c. Mr. Stoddard was being restrained and held down by several officers,

d. Mr. Stoddard was being placed in a restraint chair,

e. Mr. Stoddard had already been searched for weapons and was found to possess none,

f. Mr. Stoddard was arrested for trespassing in someone's house by simply walking through the front door,

g. There was no basis for using this type of force against Mr. Stoddard, and

h. The force used against Mr. Stoddard was gratuitous.

508.

Defendant Good acted objectively unreasonably in applying excessive force upon Mr. Stoddard because he did not have probable cause to believe that Mr. Stoddard posed a threat of serious harm to Defendant Good himself or others as evidenced by the fact that Mr. Stoddard was handcuffed, shackled, and otherwise restrained.

509.

As indicated above, the totality of the circumstances did not justify the excessive force exercised by Defendant Good.

510.

The totality of circumstances reveals that Defendant Good's beating of Mr. Stoddard was unreasonable, unnecessary, an excessive use- of-force, and violated Mr. Stoddard's constitutional rights.

511.

Defendant Good's actions were under color of law and deprived Mr. Stoddard of his rights secured under the Constitution. These actions— done with actual malice—caused Mr. Stoddard physical and mental pain and suffering and wrongful death, among other things.

512.

Defendant Good's conduct caused Mr. Stoddard's injuries.

513.

It was clearly established under 6th Circuit precedent at the time of the incident that Defendant Good's use of force was unconstitutional as indicated by cases such as *McDowell v. Rogers*, 863 F.2d 1302, 1307 (6th Cir.1988), *Phelps v. Coy*, 286 F.3d 295, 301 (6th Cir.2002), *Schreiber v. Moe*, 596 F.3d 323 (6th Cir. 2010), and more.

514.

Defendant Good is not entitled to qualified immunity for his conduct because his excessive force violated the basic legal principle that "striking a neutralized suspect who is secured by handcuffs is objectively unreasonable" *Schreiber v. Moe*, 596 F.3d 323, 332 (6th Cir. 2010)

515.

Defendant Good is not entitled to qualified immunity for his conduct because it was so egregious that everyone would know it violated the Constitution.

516.

As a result of the wrongful conduct described above, Plaintiff and/or Mr. Stoddard suffered from general and special damages, including but not limited to, physical and mental pain and suffering, wrongful death, loss of consortium, lost wages, lost earning capacity, medical bills, funeral/end of life expenses, and loss of

enjoyment of life.

<center>517.</center>

Defendant Good acted intentionally, maliciously, and/or recklessly and in disregard of Mr. Stoddard's health, safety, and constitutional rights when he struck Mr. Stoddard while restrained. This conduct shocks the conscience and is fundamentally offensive in a civilized society, so as to justify the imposition of punitive damages on Defendant Good. This is supported by the above facts and allegations that show Defendant Good's intentional, malicious, willful, wanton, and/or reckless beating of Mr. Stoddard.

<center>518.</center>

Plaintiff is entitled to an award of attorneys' fees, costs, and expenses under 42 U.S.C. § 1988.

<center>**COUNT SIXTEEN**
**VIOLATION OF FEDERAL RIGHTS PURSUANT TO 42 U.S.C. 1983**
**Excessive Force in Violation of the Fourth and Fourteenth Amendment;**
**Striking Mr. Stoddard at the Jail;**
**(Against Defendant Blevins, Individually)**</center>

<center>519.</center>

Plaintiff incorporates by reference all the above allegations as if fully set forth herein.

<center>520.</center>

In doing the acts or omissions complained of above, Defendant Blevins

<center>Page **131** of</center>

acted under the color of law to deprive Mr. Stoddard of his constitutionally protected rights, including, but not limited to:

a. The right to be free from unreasonable searches and seizures, as guaranteed by the Fourth Amendment to the United States Constitution;

b. The right not to be deprived of life or liberty without due process of law, as guaranteed by the Fourteenth Amendment to the United States Constitution;

c. The right to be free from the use of excessive force by state officers and actors, which is guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution; and

d. The right to be free from deprivation of liberty and injury without substantive due process. The right to be free from unlawful, reckless, deliberately indifferent, and conscience-shocking deadly and/or excessive force under the United States Constitution and its Amendments.

521.

Defendant Blevins, under color of state law, intentionally, unlawfully, and unreasonably seized Mr. Stoddard by means of excessive force.

522.

Force decisions must reasonably consider the officer's objective for using force; the Officer's reasonable perceptions of the subject's actions or behaviors the officer is attempting to stop, thwart, or control; the foreseeable risks of injuries or

harm to the subject resulting from the force to be used and the foreseeable secondary risks of injury.

<center>523.</center>

Defendant Blevins did not take reasonable preventative measures and instead deployed an unreasonable and excessive amount of force.

<center>524.</center>

Defendant Blevins actively participated in excessive force in violation of Mr. Stoddard's Fourth and Fourteenth Amendment Rights when he struck, punched, kicked, and otherwise physically assaulted Mr. Stoddard while Mr. Stoddard was handcuffed, shackled, and restrained by multiple officers as well as a restrain chair.

<center>525.</center>

The force used by Defendant Blevins amounted to unlawful force that carried with it a high risk of causing serious bodily harm to Mr. Stoddard, and the use of such force was unnecessary and unreasonable under the circumstances then and there existing.

<center>526.</center>

Defendant Blevins's use of force was excessive and unreasonable because, among other things

a. Mr. Stoddard was handcuffed with his hands restrained behind his back,

b. Mr. Stoddard's feet were shackled together by metal shackles,

c. Mr. Stoddard was being restrained and held down by several officers,

d. Mr. Stoddard was being placed in a restraint chair,

e. Mr. Stoddard had already been searched for weapons and was found to possess none,

f. Mr. Stoddard was arrested for trespassing in someone's house by simply walking through the front door,

g. There was no basis for using this type of force against Mr. Stoddard, and

h. The force used against Mr. Stoddard was gratuitous.

527.

Defendant Blevins acted objectively unreasonably in applying excessive force upon Mr. Stoddard because he did not have probable cause to believe that Mr. Stoddard posed a threat of serious harm to Defendant Blevins himself or others as evidenced by the fact that Mr. Stoddard was handcuffed, shackled, and otherwise restrained.

528.

As indicated above, the totality of the circumstances did not justify the excessive force exercised by Defendant Blevins.

529.

The totality of circumstances reveals that Defendant Blevins's beating of

Mr. Stoddard was unreasonable, unnecessary, an excessive use- of-force, and violated Mr. Stoddard's constitutional rights.

530.

Defendant Blevins's actions were under color of law and deprived Mr. Stoddard of his rights secured under the Constitution. These actions— done with actual malice—caused Mr. Stoddard physical and mental pain and suffering and wrongful death, among other things.

531.

Defendant Blevins's conduct caused Mr. Stoddard's injuries.

532.

It was clearly established under 6th Circuit precedent at the time of the incident that Defendant Blevins's use of force was unconstitutional as indicated by cases such as *McDowell v. Rogers*, 863 F.2d 1302, 1307 (6th Cir.1988), *Phelps v. Coy*, 286 F.3d 295, 301 (6th Cir.2002), *Schreiber v. Moe*, 596 F.3d 323 (6th Cir. 2010), and more.

533.

Defendant Blevins is not entitled to qualified immunity for his conduct because his excessive force violated the basic legal principle that "striking a neutralized suspect who is secured by handcuffs is objectively unreasonable" *Schreiber v. Moe*, 596 F.3d 323, 332 (6th Cir. 2010).

534.

Defendant Blevins is not entitled to qualified immunity for his conduct because it was so egregious that everyone would know it violated the Constitution.

535.

As a result of the wrongful conduct described above, Plaintiff and/or Mr. Stoddard suffered from general and special damages, including but not limited to, physical and mental pain and suffering, wrongful death, loss of consortium, lost wages, lost earning capacity, medical bills, funeral/end of life expenses, and loss of enjoyment of life.

536.

Defendant Blevins acted intentionally, maliciously, and/or recklessly and in disregard of Mr. Stoddard's health, safety, and constitutional rights when he struck Mr. Stoddard while restrained. This conduct shocks the conscience and is fundamentally offensive in a civilized society, so as to justify the imposition of punitive damages on Defendant Blevins. This is supported by the above facts and allegations that show Defendant Blevins's intentional, malicious, willful, wanton, and/or reckless beating of Mr. Stoddard.

537.

Plaintiff is entitled to an award of attorneys' fees, costs, and expenses under 42 U.S.C. § 1988.

**COUNT SEVENTEEN**
**VIOLATION OF FEDERAL RIGHTS PURSUANT TO 42 U.S.C. 1983**
**Excessive Force in Violation of the Fourth and Fourteenth Amendment;**
**Striking Mr. Stoddard at the Jail;**
**(Against Defendant Salyer, Individually)**

538.

Plaintiff incorporates by reference all the above allegations as if fully set forth herein.

539.

Mr. Stoddard had a constitutional right to be free from the unlawful and excessive use of force, pursuant to the Fourth and Fourteenth Amendments.

540.

In doing the acts or omissions complained of above, Defendant Salyer acted under the color of law to deprive Mr. Stoddard of his constitutionally protected rights, including, but not limited to:

a. The right to be free from unreasonable searches and seizures, as guaranteed by the Fourth Amendment to the United States Constitution;

b. The right not to be deprived of life or liberty without due process of law, as guaranteed by the Fourteenth Amendment to the United States Constitution;

c. The right to be free from the use of excessive force by state officers and actors, which is guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution; and

d. The right to be free from deprivation of liberty and injury without substantive due process. The right to be free from unlawful, reckless, deliberately indifferent, and conscience-shocking deadly and/or excessive force under the United States Constitution and its Amendments.

541.

Defendant Salyer, under color of state law, intentionally, unlawfully, and unreasonably seized Mr. Stoddard by means of excessive force.

542.

Force decisions must reasonably consider the officer's objective for using force; the Officer's reasonable perceptions of the subject's actions or behaviors the officer is attempting to stop, thwart, or control; the foreseeable risks of injuries or harm to the subject resulting from the force to be used and the foreseeable secondary risks of injury.

543.

Defendant Salyer did not take reasonable preventative measures and instead deployed an unreasonable and excessive amount of force.

544.

Defendant Salyer actively participated in excessive force in violation of Mr. Stoddard's Fourth and Fourteenth Amendment Rights when he struck, punched, kicked, and otherwise physically assaulted Mr. Stoddard while Mr. Stoddard was

handcuffed, shackled, and restrained by multiple officers as well as a restrain chair.

545.

The force used by Defendant Salyer amounted to unlawful force that carried with it a high risk of causing serious bodily harm to Mr. Stoddard, and the use of such force was unnecessary and unreasonable under the circumstances then and there existing.

546.

Defendant Salyer's use of force was excessive and unreasonable because, among other things

a. Mr. Stoddard was handcuffed with his hands restrained behind his back,

b. Mr. Stoddard's feet were shackled together by metal shackles,

c. Mr. Stoddard was being restrained and held down by several officers,

d. Mr. Stoddard was being placed in a restraint chair,

e. Mr. Stoddard had already been searched for weapons and was found to possess none,

f. Mr. Stoddard was arrested for trespassing in someone's house by simply walking through the front door,

g. There was no basis for using this type of force against Mr. Stoddard, and

h. The force used against Mr. Stoddard was gratuitous.

547.

Defendant Salyer acted objectively unreasonably in applying excessive force upon Mr. Stoddard because he did not have probable cause to believe that Mr. Stoddard posed a threat of serious harm to Defendant Salyer himself or others as evidenced by the fact that Mr. Stoddard was handcuffed, shackled, and otherwise restrained.

548.

As indicated above, the totality of the circumstances did not justify the excessive force exercised by Defendant Salyer.

549.

The totality of circumstances reveals that Defendant Salyer's beating of Mr. Stoddard was unreasonable, unnecessary, an excessive use- of-force, and violated Mr. Stoddard's constitutional rights.

550.

Defendant Salyer's actions were under color of law and deprived Mr. Stoddard of his rights secured under the Constitution. These actions— done with actual malice—caused Mr. Stoddard physical and mental pain and suffering and wrongful death, among other things.

551.

Defendant Salyer's conduct caused Mr. Stoddard's injuries.

552.

It was clearly established under 6th Circuit precedent at the time of the incident that Defendant Salyer's use of force was unconstitutional as indicated by cases such as *McDowell v. Rogers*, 863 F.2d 1302, 1307 (6th Cir.1988), *Phelps v. Coy*, 286 F.3d 295, 301 (6th Cir.2002), *Schreiber v. Moe*, 596 F.3d 323 (6th Cir. 2010), and more.

<div align="center">553.</div>

Defendant Salyer is not entitled to qualified immunity for his conduct because his excessive force violated the basic legal principle that "striking a neutralized suspect who is secured by handcuffs is objectively unreasonable" *Schreiber v. Moe*, 596 F.3d 323, 332 (6th Cir. 2010).

<div align="center">554.</div>

Defendant Salyer is not entitled to qualified immunity for his conduct because it was so egregious that everyone would know it violated the Constitution.

<div align="center">555.</div>

As a result of the wrongful conduct described above, Plaintiff and/or Mr. Stoddard suffered from general and special damages, including but not limited to, physical and mental pain and suffering, wrongful death, loss of consortium, lost wages, lost earning capacity, medical bills, funeral/end of life expenses, and loss of enjoyment of life.

<div align="center">556.</div>

Defendant Salyer acted intentionally, maliciously, and/or recklessly and in disregard of Mr. Stoddard's health, safety, and constitutional rights when he struck Mr. Stoddard while restrained. This conduct shocks the conscience and is fundamentally offensive in a civilized society, so as to justify the imposition of punitive damages on Defendant Salyer. This is supported by the above facts and allegations that show Defendant Salyer's intentional, malicious, willful, wanton, and/or reckless beating of Mr. Stoddard.

557.

Plaintiff is entitled to an award of attorneys' fees, costs, and expenses under 42 U.S.C. § 1988.

.

## COUNT EIGHTEEN
## VIOLATION OF FEDERAL RIGHTS PURSUANT TO 42 U.S.C. 1983
## Failure To Intervene
**(Against Defendants Gilliam, Individually, Defendant Amyx, Individually, Defendant Harer, Individually, Defendant King, Individually, Defendant Cunningham, Individually, Defendant Good, Individually, Defendant Blevins, Individually, and Defendant Salyer, Individually.)**

558.

Plaintiff incorporates by reference all the above allegations as if fully set forth herein.

559.

Each of the above Defendants, the Assaulting Deputies, failed to intervene

Page **142** of

when each other used unreasonable, excessive force against Mr. Stoddard when they struck, kicked, punched, tased and otherwise assaulted Mr. Stoddard while he was handcuffed, shackled, and restrained.

560.

Each of the above Defendants, the Assaulting Deputies, observed or had reason to know that excessive force would be or was being uses as each of these Defendants participated in the beating and were in close proximity to it.

561.

Each of the above Defendants, the Assaulting Deputies, had both the opportunity and the means to prevent the harm from occurring as evidenced by the following list of non-exhaustive facts:

A. The length of the encounter indicated that the Defendant officers did not need to make a quick-second decision.

B. Each of the Defendants was in close proximity to the other officers involved in the incident and could have prevented the use of excessive force or verbally counseled the other officers before they used excessive force.

562.

In spite of the fact that each of the above Defendants, the Assaulting Deputies, observed or had reason to know that excessive force would be or was being used and had both the opportunity and the means to prevent the harm from

Page **143** of

occurring, each of the above Defendants, the Assaulting Deputies, sat idle and did not intervene to help Mr. Stoddard.

563.

Each of the above Defendants, the Assaulting Deputies, unlawfully and unreasonably seized Mr. Stoddard by means of excessive force in the form of failing to intervene to prevent each others' implementation of excessive force.

564.

It was clearly established under 6th Circuit federal law at the time of the incident that Each of the above Defendants, the Assaulting Deputies, failure to intervene with each others' excessive force was unconstitutional and amounted to excessive force.

565.

Each of the above Defendants, the Assaulting Deputies, are not entitled to qualified immunity for their conduct because it was so egregious that everyone would know it violated the Constitution.

566.

As a result of the wrongful conduct described above, Plaintiff and/or Mr. Stoddard suffered from general and special damages, including but not limited to, physical and mental pain and suffering, wrongful death, loss of consortium, lost wages, lost earning capacity, medical bills, funeral/end of life expenses, and loss of

enjoyment of life.

568.

Each of the above Defendants, the Assaulting Deputies, acted intentionally, maliciously, and/or recklessly and in disregard of Mr. Stoddard's health, safety, and constitutional rights when he struck Mr. Stoddard while restrained. This conduct shocks the conscience and is fundamentally offensive in a civilized society, so as to justify the imposition of punitive damages on Defendant Salyer. This is supported by the above facts and allegations that show Defendant Salyer's intentional, malicious, willful, wanton, and/or reckless beating of Mr. Stoddard.

568.

Plaintiff is entitled to an award of attorneys' fees, costs, and expenses under 42 U.S.C. § 1988.

**COUNT NINETEEN**
**VIOLATION OF FEDERAL RIGHTS PURSUANT TO 42 U.S.C. 1983**
**Excessive Force in Violation of the Fourth and Fourteenth Amendment;**
**Striking Mr. Stoddard at the Jail;**
**(Against Defendant Bowlin, Individually)**

569.

Plaintiff incorporates by reference all the above allegations as if fully set forth herein.

570.

Mr. Stoddard had a constitutional right to be free from the unlawful

Page **145** of

and excessive use of force, pursuant to the Fourth and Fourteenth Amendments.

571.

In doing the acts or omissions complained of above, Defendant Bowlin acted under the color of law to deprive Mr. Stoddard of his constitutionally protected rights, including, but not limited to:

a. The right to be free from unreasonable searches and seizures, as guaranteed by the Fourth Amendment to the United States Constitution;

b. The right not to be deprived of life or liberty without due process of law, as guaranteed by the Fourteenth Amendment to the United States Constitution;

c. The right to be free from the use of excessive force by state officers and actors, which is guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution; and

d. The right to be free from deprivation of liberty and injury without substantive due process. The right to be free from unlawful, reckless, deliberately indifferent, and conscience-shocking deadly and/or excessive force under the United States Constitution and its Amendments.

572.

Defendant Bowlin, under color of state law, intentionally, unlawfully, and unreasonably seized Mr. Stoddard by means of excessive force.

573.

Page **146** of

Force decisions must reasonably consider the officer's objective for using force; the Officer's reasonable perceptions of the subject's actions or behaviors the officer is attempting to stop, thwart, or control; the foreseeable risks of injuries or harm to the subject resulting from the force to be used and the foreseeable secondary risks of injury.

574.

Defendant Bowlin did not take reasonable preventative measures and instead deployed an unreasonable and excessive amount of force.

575.

Defendant Bowlin actively participated in excessive force in violation of Mr. Stoddard's Fourth and Fourteenth Amendment Rights when knelt and applied excessive pressure to Mr. Stoddard's upper back and/or neck causing Mr. Stoddard to suffer from an anoxic brain injury in the context of a police restraint.

576.

The force used by Defendant Bowlin amounted to unlawful force that carried with it a high risk of causing serious bodily harm to Mr. Stoddard, and the use of such force was unnecessary and unreasonable under the circumstances then and there existing.

577.

Defendant Bowlin's use of force deadly force was excessive and

unreasonable because, among other things

  a.  Mr. Stoddard had one of his hands restrained by officers,

  b.  Mr. Stoddard's feet were shackled together by metal shackles,

  c.  Mr. Stoddard was being restrained and held down by two officers,

  d.  Mr. Stoddard was found to possess no weapons,

  e.  Mr. Stoddard was having trouble breathing and was suffering from an obvious
      medical emergency,

  f.  Mr. Stoddard was prone on his back.

  g.  There was no basis for using this type of force against Mr. Stoddard, and

  h.  The force used against Mr. Stoddard was gratuitous.

<div align="center">578.</div>

Defendant Bowlin acted objectively unreasonably in applying excessive deadly force upon Mr. Stoddard because he did not have probable cause to believe that Mr. Stoddard posed a threat of serious harm to Defendant Bowlin himself or others as evidenced by the fact that Mr. Stoddard was already restrained shackled, possessed no weapon, was prone on the floor, and suffering from a medical emergency.

<div align="center">579.</div>

As indicated above, the totality of the circumstances did not justify the excessive force exercised by Defendant Bowlin.

<div align="center">Page **148** of</div>

580.

The totality of circumstances reveals that Defendant Bowlin's deadly force onto Mr. Stoddard was unreasonable, unnecessary, an excessive use- of-force, and violated Mr. Stoddard's constitutional rights.

581.

Defendant Bowlin's actions were under color of law and deprived Mr. Stoddard of his rights secured under the Constitution. These actions— done with actual malice—caused Mr. Stoddard physical and mental pain and suffering and wrongful death, among other things.

582.

Defendant Bowlin's conduct caused Mr. Stoddard's injuries and death.

583.

It was clearly established under 6th Circuit precedent at the time of the incident that Defendant Bowlin's use of force was unconstitutional as indicated by cases such as *King v. City of Rockford, Michigan*, 97 F.4th 379 (6th Cir. 2024) and more.

584.

Defendant Bowlin is not entitled to qualified immunity for his conduct because it was so egregious that everyone would know it violated the Constitution.

585.

As a result of the wrongful conduct described above, Plaintiff and/or Mr. Stoddard suffered from general and special damages, including but not limited to, physical and mental pain and suffering, wrongful death, loss of consortium, lost wages, lost earning capacity, medical bills, funeral/end of life expenses, and loss of enjoyment of life.

586.

Defendant Bowlin acted intentionally, maliciously, and/or recklessly and in disregard of Mr. Stoddard's health, safety, and constitutional rights when he applied excessive pressure to Mr. Stoddard's upper back and neck while Mr. Stoddard was restrained, causing asphyxiation. This conduct shocks the conscience and is fundamentally offensive in a civilized society, so as to justify the imposition of punitive damages on Defendant Bowlin. This is supported by the above facts and allegations that show Defendant Bowlin's intentional, malicious, willful, wanton, and/or reckless beating of Mr. Stoddard.

587.

Plaintiff is entitled to an award of attorneys' fees, costs, and expenses under 42 U.S.C. § 1988.

**COUNT TWENTY**
**ASSAULT & BATTERY**
**(Against Defendant Gilliam, Individually, Defendant Amyx, Individually,**
**Defendant Harer, Individually, Defendant King, Individually, Defendant**

Page **150** of

**Cunningham, Individually, Defendant Good, Individually, Defendant Blevens, Individually, Defendant Wade, Individually, Defendant Bowlin, Individually, and Defendant Salyer, Individually) & Tenn. Code Ann. § 8-8-301 et. Seq (Against Sullivan County)**

588.

Plaintiff incorporates by reference all the above allegations as if fully set forth herein.

589.

The above named defendants acted knowingly, wantonly, intentionally, and with gross disregard for the rights of Mr. Stoddard, and assaulted and battered Mr. Stoddard.

590.

The above-named defendants did intentionally attempt to commit and did so commit serious bodily harm on Mr. Stoddard, and possessed a contemporaneous and/or appearance of the present ability to cause such harm and trauma.

591.

Accordingly, the above-named Defendants committed an assault and battery against Mr. Stoddard, making contact with Mr. Stoddard in a harmful and offensive way, committing battery against him when they struck him, tased him, kneeled on him, and excessively handcuffed him, among other things..

592.

Sullivan County is responsible for the acts of its employees and agents

pursuant to the doctrine of respondeat superior and is liable to Plaintiff pursuant to Tennessee Code Annotated § 8-8-301 et seq.

593.

As a result of the wrongful conduct described above, Plaintiff and/or Mr. Stoddard suffered from general and special damages, including but not limited to, physical and mental pain and suffering, wrongful death, loss of consortium, lost wages, lost earning capacity, medical bills, funeral/end of life expenses, and loss of enjoyment of life.

**COUNT TWENTY-ONE**
**OUTRAGEOUS CONDUCT/INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(Against Defendant Gilliam, Individually, Defendant Amyx, Individually, Defendant Harer, Individually, Defendant King, Individually, Defendant Cunningham, Individually, Defendant Good, Individually, Defendant Blevens, Individually, Defendant Wade, Individually, Defendant Bowlin, Individually, and Defendant Salyer, Individually) & Tenn. Code Ann. § 8-8-301 et. Seq (Against Sullivan County)**
594.

Plaintiff incorporates by reference all the above allegations as if fully set forth herein.

595.

The allegations outlined herein against the above-named Defendants while

Page **152** of

Defendants were acting under the color of law, were outrageous and intolerable in a civilized society and were done with a reckless disregard of the probability of causing emotional distress.

596.

The conduct of the above-named Defendants, as outlined above, was outrageous. Defendants knew that their conduct would likely result in bodily injuries and severe emotional distress to Mr. Stoddard, and their conduct was perpetrated with intent to inflict, or with reckless disregard of the probability of inflicting, mental anguish and severe emotional distress upon Mr. Stoddard.

597.

Sullivan County is responsible for the acts of its employees and agents pursuant to the doctrine of respondeat superior and is liable to Plaintiff pursuant to Tennessee Code Annotated § 8-8-301 et seq.

598.

As a result of the conduct of Defendants, Mr. Stoddard has sustained and suffered personal injuries, including extreme emotional distress.

599.

Sullivan County is liable to Plaintiff under Tenn. Code Ann. § 8-8-301 et seq.

## COUNT TWENTY-TWO

Page **153** of

## VIOLATION OF FEDERAL RIGHTS PURSUANT TO 42 U.S.C. 1983
## Supervisory Liability
## (Against Defendant Cassidy, Individually)

### 600.

Plaintiff incorporates by reference all the above allegations as if fully set forth herein.

### 601.

Defendant Cassidy intentionally implemented official policies and customs that resulted in Defendant Gilliam, Defendant Amyx, Defendant Harer, Defendant King, Defendant Cunningham, Defendant Good, Defendant Blevins, and Defendant Salyer acting with deliberate indifference to Mr. Stoddard's Fourth and Fourteenth Amendment rights to be free from excessive force.

### 602.

Defendant Gilliam, Defendant Amyx, Defendant Harer, Defendant King, Defendant Cunningham, Defendant Good, Defendant Blevins, and Defendant Salyer violated Mr. Stoddard's Fourth and Fourteenth Amendment rights to be free from excessive force, when they punched, struck, kicked, kneed, tased, and otherwise assaulted Mr. Stoddard while he was handcuffed, shackled, and restrained.

### 603.

Defendant Cassidy failed to train the Assaulting Deputies on the proper use of force when an arrestee is handcuffed and in shackles.

604.

After Mr. Stoddard was assaulted at the jail, Defendant Amyx stated that Sullivan County Sheriff's office training and policy includes the use of pain compliance for resistant subjects and Defendant Amyx attributed the way he conducted himself to his training policy.

605.

Defendant Gilliam also attributed his use of force at the jail to his training.

606.

The Assaulting Deputies were not trained on how to minimize the use of force and when force is needed.

607.

Defendant Cassidy's and Defendant Sullivant County's use of force training and policy caused the Assaulting Deputies to strike, knee, punch, elbow, tase, and otherwise assault Mr. Stoddard while he was handcuffed, shackled, and restrained.

608.

Multiple similar incidents of excessive force occurred under Defendant Cassidy's reign, See, e.g., Freeman, Fritz, and Crowley, which are all cases filed against Sullivan County officials for similar violations.

609.

Defendant Gilliam, Defendant Amyx, Defendant Harer, Defendant King,

Defendant Cunningham, Defendant Good, Defendant Blevins, and Defendant Salyer
were not adequately trained on using force against a restrained individual

610.

Defendant Gilliam, Defendant Amyx, Defendant Harer, Defendant King,
Defendant Cunningham, Defendant Good, Defendant Blevins, and Defendant Salyer
were not adequately trained on identifying arrestee's with mental illnesses.

611.

The failure to train on mental health response causes Sullivan County deputies to
mistake mental health crisis for drug highs and engage with arrestees in a way that
further worsens their mental health crisis.

612.

Further, due to the lack of training and this custom, officers are not equipped to
deal with mental health crisis in the field and are unable to anticipate the behavior of a
person suffering from a mental health crisis.

613.

This custom and lack of training caused Mr. Stoddard's injuries as the individual
Defendants in this case mistook Mr. Stoddard's mental health crisis with a drug induced
high and this resulted in an escalation of excessive force.

614.

Defendant Cassidy knew that based on similar unconstitutional conduct materially

similar to violation of Mr. Stoddard's constitutional rights that additional training/supervision was needed to avoid the beating of Plaintiff while restrained likely recurring in the future

615.

Defendant Cassidy knew that based on similar unconstitutional conduct materially similar to violation of Mr. Stoddard's constitutional rights that additional training/supervision was needed to avoid using excessive force against an arrestee suffering from a mental health crisis likely occurring in the future

616.

Defendant Cassidy made a deliberate choice not to provide additional training/supervision to Defendant Gilliam, Defendant Amyx, Defendant Harer, Defendant King, Defendant Cunningham, Defendant Good, Defendant Blevins, and Defendant Salyer in the face of known problems.

617.

Upon information and belief, Defendant Gilliam has been disciplined for on duty conduct.

618.

Defendant Sullivan County, due to Defendant Cassidy's actions, lacks adequate policy to guide staff to use appropriate force techniques.

619.

Defendant Sullivan County, due to Defendant Cassidy's actions, fails to adequately investigate uses of force or take sufficient steps to prevent excessive force by holding staff who use excessive force accountable.

620.

Sheriff deputies regularly use force when no force is necessary and routinely use force that is disproportionate to the threat.

621.

Sheriff deputies regularly use force where unnecessary and to a greater degree than necessary.

622.

Sheriff deputies use force on people experiencing mental health crises without first involving mental health staff or attempting to de-escalate.

623.

Policy, training, and accountability systems by Defendant Cassidy are inadequate to prevent excessive force.

624.

Defendant Sullivan County, due to Defendant Cassidy's actions, also lacks adequate policies and systems to train staff to use appropriate force and hold staff accountable for using excessive force.

625.

Defendant Sullivan County, due to Defendant Cassidy's actions, lacks adequate policy and training to guide officers in the appropriate use of force.

626.

Defendant Sullivan County, due to Defendant Cassidy's actions, also lacks systems to identify excessive force and address it.

627.

Defendant Cassidy's and Defendant Sullivant County's use of force training and policy caused the Assaulting Deputies to strike, knee, punch, elbow, tase, and otherwise assault Mr. Stoddard while he was handcuffed, shackled, and restrained.

628.

It is not the practice of Sullivan County Sheriff Office, due to the leadership of Defendant Cassidy, for deputies to make mental health care determinations for arrestees. Rather that responsibility falls to the health care coordinator of the jail.

629.

This custom and failure to train causes Sullivan County deputies to mistake mental health crisis for drug highs and engage with arrestees in a way that further worsens their mental health crisis.

630.

Further, due to the lack of training and this custom, arrestees are not equipped to deal with mental health crisis in the field and are unable to anticipate the behavior of a

person suffering from a mental health crisis.

631.

This custom and lack of training caused Mr. Stoddard's injuries as the individual Defendants in this case mistook Mr. Stoddard's mental health crisis with a drug induced high and this resulted in an escalation of excessive force.

632.

Defendant Sullivan County and Defendant Cassidy only issue metal hinge style handcuffs and did not issue flex cuffs or equivalents

633.

Per department policy, due to Defendant Cassidy's actions, officers are required to use department issued handcuffs or handcuffs that are equivalent.

634.

This policy does not leave room for arrestees whose wrists are injured or being wounded by the metal handcuffs.

635.

This rigid policy caused Mr. Stoddard to suffer from injuries and pain and suffering as his handcuffs and shackles were digging into his skin, causing him to bleed and causing him much pain and discomfort.

636.

Defendant Gilliam, Defendant Salyer, Defendant Wade, and Defendant

Cunningham violated Mr. Stoddard's Fourth and Fourteenth Amendment rights to be free from excessive force, when they excessively tightened his handcuffs and shackles to the point of bleeding.

637.

Defendant Gilliam, Defendant Amyx, Defendant Harer, Defendant King, Defendant Cunningham, Defendant Good, Defendant Blevins, and Defendant Salyer violated Mr. Stoddard's Fourth and Fourteenth Amendment rights to be free from excessive force, when they punched, struck, kicked, kneed, tased, and otherwise assaulted Mr. Stoddard while he was handcuffed, shackled, and restrained.

638.

Defendant Cassidy was deliberately indifferent in employing these policies as he knew of the consequences such as deaths, assaults, and uses of excessive force that resulted from them.

639.

As a result of the wrongful conduct described above, Plaintiff and/or Mr. Stoddard suffered from general and special damages, including but not limited to, physical and mental pain and suffering, wrongful death, loss of consortium, lost wages, lost earning capacity, medical bills, funeral/end of life expenses, and loss of enjoyment of life.

640.

Defendant Cassidy acted intentionally, maliciously, and/or recklessly and in

disregard of Mr. Stoddard's health, safety, and constitutional rights when he failed to

train his officers on the use of force and the interactions with sufferers of mental health,

as he knew the deaths and uses of excessive force were occurring as a result of his

policies and training. This conduct shocks the conscience and is fundamentally offensive

in a civilized society, so as to justify the imposition of punitive damages on Defendant

Cassidy. This is supported by the above facts and allegations that show Defendant

Cassidy's intentional, malicious, willful, wanton, and/or reckless beating of Mr.

Stoddard.


### COUNT TWENTY-THREE
### VIOLATION OF FEDERAL RIGHTS PURSUANT TO 42 U.S.C. 1983
### Monell and Canton Claims for Failure to Train
### (Against Defendant Sullivan County and Defendant Cassidy in his Official
### Capacity)


641.

Plaintiff incorporates by reference all the above allegations as if fully set forth

herein.

642.

Defendant Gilliam, Defendant Amyx, Defendant Harer, Defendant King,

Defendant Cunningham, Defendant Good, Defendant Blevins, and Defendant Salyer

violated Mr. Stoddard's Fourth and Fourteenth Amendment rights to be free from

excessive force, when they punched, struck, kicked, kneed, tased, and otherwise

Page **162** of

assaulted Mr. Stoddard while he was handcuffed, shackled, and restrained.

643.

Defendant Sullivan County and Defendant Cassidy failed to train the Assaulting Deputies on the proper use of force when an arrestee is handcuffed and in shackles.

644.

After Mr. Stoddard was assaulted at the jail, Defendant Amyx stated that Sullivan County Sheriff's office training and policy includes the use of pain compliance for resistant subjects and Defendant Amyx attributed the way he conducted himself to his training policy.

645.

Defendant Gilliam also attributed his use of force at the jail to his training.

646.

The Assaulting Deputies were not trained on how to minimize the use of force and when force is needed.

647.

Defendant Cassidy's and Defendant Sullivant County's use of force training and policy caused the Assaulting Deputies to strike, knee, punch, elbow, tase, and otherwise assault Mr. Stoddard while he was handcuffed, shackled, and restrained.

648.

Defendant Gilliam, Defendant Amyx, Defendant Harer, Defendant King,

Defendant Cunningham, Defendant Good, Defendant Blevins, and Defendant Salyer were not adequately trained on using force against a restrained individual

649.

Defendant Gilliam, Defendant Amyx, Defendant Harer, Defendant King, Defendant Cunningham, Defendant Good, Defendant Blevins, and Defendant Salyer were not adequately trained on identifying arrestee's with mental illnesses.

650.

The failure to train on mental health response causes Sullivan County deputies to mistake mental health crisis for drug highs and engage with arrestees in a way that further worsens their mental health crisis.

651.

Further, due to the lack of training and this custom, officers are not equipped to deal with mental health crisis in the field and are unable to anticipate the behavior of a person suffering from a mental health crisis.

652.

This custom and lack of training caused Mr. Stoddard's injuries as the individual Defendants in this case mistook Mr. Stoddard's mental health crisis with a drug induced high and this resulted in an escalation of excessive force.

653.

Sullivan County official policy makers such as Defendant Cassidy knew that

based on similar unconstitutional conduct materially similar to violation of Mr. Stoddard's constitutional rights that additional training/supervision was needed to avoid the beating of Plaintiff while restrained likely recurring in the future.

654.

Sullivan County official policy makers such as Defendant Cassidy knew that based on similar unconstitutional conduct materially similar to violation of Mr. Stoddard's constitutional rights that additional training/supervision was needed to avoid using excessive force against an arrestee suffering from a mental health crisis likely occurring in the future.

655.

Multiple similar incidents of excessive force occurred under Defendant Cassidy's reign, See, e.g., Freeman, Fritz, and Crowley, which are all cases filed against Sullivan County officials for similar violations.

656.

Upon information and belief, Defendant Gilliam has been disciplined for on duty conduct.

657.

Defendant Cassidy made a deliberate choice not to provide additional training/supervision to Defendant Gilliam, Defendant Amyx, Defendant Harer, Defendant King, Defendant Cunningham, Defendant Good, Defendant Blevins, and

Defendant Salyer.

<center>658.</center>

As a result of the wrongful conduct described above, Plaintiff and/or Mr. Stoddard suffered from general and special damages, including but not limited to, physical and mental pain and suffering, wrongful death, loss of consortium, lost wages, lost earning capacity, medical bills, funeral/end of life expenses, and loss of enjoyment of life.

<center>

**COUNT TWENTY-FOUR**
**VIOLATION OF FEDERAL RIGHTS PURSUANT TO 42 U.S.C. 1983**
**Monell and Canton Claims for Failure to Train**
**(Against Defendant Sullivan County and Defendant Cassidy in his Official Capacity)**

</center>

<center>659.</center>

Plaintiff incorporates by reference all the above allegations as if fully set forth herein.

<center>660.</center>

Defendant Cassidy in his official capacity and Defendant Sullivan County are policy makers for the Sullivan County Sheriff's Office.

<center>661.</center>

Defendant Cassidy and Defendant Sullivan County lacks adequate policy to guide staff to use appropriate force techniques.

<center>662.</center>

Defendant Cassidy and Defendant Sullivan County fails to adequately investigate

<center>Page **166** of</center>

uses of force or take sufficient steps to prevent excessive force by holding staff who use

excessive force accountable.

663.

Sheriff deputies regularly use force when no force is necessary and routinely use

force that is disproportionate to the threat.

664.

Sheriff deputies regularly use force where unnecessary and to a greater degree

than necessary.

665.

Sheriff deputies use force on people experiencing mental health crises without first

involving mental health staff or attempting to de-escalate

666.

Policy, training, and accountability systems by Defendant Cassidy and Defendant

Sullivan County are inadequate to prevent excessive force

667.

Defendant Cassidy and Defendant Sullivan County also lacks adequate policies

and systems to train staff to use appropriate force and hold staff accountable for using

excessive force.

668.

Defendant Cassidy and Defendant Sullivan County lacks adequate policy and

training to guide officers in the appropriate use of force.

669.

Defendant Cassidy and Defendant Sullivan County also lacks systems to identify excessive force and address it.

670.

Defendant Cassidy's and Defendant Sullivant County's use of force training and policy caused the Assaulting Deputies to strike, knee, punch, elbow, tase, and otherwise assault Mr. Stoddard while he was handcuffed, shackled, and restrained.

671.

It is not the practice of Sullivan County Sheriff Office, due to the leadership of Defendant Cassidy and Defendant Sullivan County, for deputies to make mental health care determinations for arrestees. Rather that responsibility falls to the health care coordinator of the jail.

672.

This custom and failure to train causes Sullivan County deputies to mistake mental health crisis for drug highs and engage with arrestees in a way that further worsens their mental health crisis.

673.

Further, due to the lack of training and this custom, arrestees are not equipped to deal with mental health crisis in the field and are unable to anticipate the behavior of a

person suffering from a mental health crisis.

674.

This custom and lack of training caused Mr. Stoddard's injuries as the individual Defendants in this case mistook Mr. Stoddard's mental health crisis with a drug induced high and this resulted in an escalation of excessive force.

675.

Defendant Sullivan County and Defendant Cassidy only issue metal hinge style handcuffs and did not issue flex cuffs or equivalents

676.

Per department policy, officers are required to use department issued handcuffs or handcuffs that are equivalent.

677.

This policy does not leave room for arrestees whose wrists are injured or being wounded by the metal handcuffs.

678.

This rigid policy caused Mr. Stoddard to suffer from injuries and pain and suffering as his handcuffs and shackles were digging into his skin, causing him to bleed and causing him much pain and discomfort.

679.

Defendant Gilliam, Defendant Salyer, Defendant Wade, and Defendant

Cunningham violated Mr. Stoddard's Fourth and Fourteenth Amendment rights to be free from excessive force, when they excessively tightened his handcuffs and shackles to the point of bleeding.

680.

Defendant Gilliam, Defendant Amyx, Defendant Harer, Defendant King, Defendant Cunningham, Defendant Good, Defendant Blevins, and Defendant Salyer violated Mr. Stoddard's Fourth and Fourteenth Amendment rights to be free from excessive force, when they punched, struck, kicked, kneed, tased, and otherwise assaulted Mr. Stoddard while he was handcuffed, shackled, and restrained.

681.

Defendant Cassidy and Defendant Sullivan County were deliberately indifferent in employing these policies as they knew of the consequences such as deaths, assaults, and uses of excessive force that resulted from them.

682.

Multiple similar incidents of excessive force occurred under Defendant Cassidy's reign, See, e.g., Freeman, Fritz, and Crowley, which are all cases filed against Sullivan County officials for similar violations.

683.

As a result of the wrongful conduct described above, Plaintiff and/or Mr. Stoddard suffered from general and special damages, including but not limited to, physical and

mental pain and suffering, wrongful death, loss of consortium, lost wages, lost earning

capacity, medical bills, funeral/end of life expenses, and loss of enjoyment of life.

## COUNT TWENTY-FIVE
## WRONGFUL DEATH
### (Against All Defendants)

684.

Plaintiff incorporates by reference all the above allegations as if fully set forth

herein.

685.

As a direct and proximate result of the deliberately indifferent and wrongful

conduct of Defendants, Mr. Stoddard was wrongfully killed.

686.

Plaintiff is entitled to recover for Mr. Stoddard's wrongful death as

provided by Tennessee law.

## COUNT TWENTY-SIX
## PUNITIVE DAMAGES
### (Against All Individual Defendants)

687.

Plaintiff incorporates by reference all the above allegations as if fully set forth

herein.

688.

Page **171** of

As a direct and proximate result of the deliberately indifferent and wrongful conduct of the individual Defendants, Mr. Stoddard endured physical pain and suffering and wrongful death.

689.

As described in the facts and allegations above, the wrongful acts of the individually named Defendants were willful, oppressive, intentional, and malicious; therefore, punitive damages should be asserted against Defendants in an amount deemed sufficient to punish and deter Defendants and others in similar positions of authority from engaging in similar conduct in the future.

690.

Pursuant to 42 U.S.C. § 1988(b), Plaintiff is entitled to recover her reasonable attorney fees incurred herein.

## JURY DEMAND

691.

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of all claims asserted in this Complaint so triable.

## PRAYER FOR RELIEF

692.

That the summons be issued and that Defendants be duly served with a copy of this Complaint and required to answer the same;

693.

That the Court find that Defendants have engaged in the conduct and statutory and common law violations alleged herein;

694.

That Plaintiff have a trial by jury;

695.

That Plaintiff be awarded such damages as will fully compensate Plaintiff for all injuries caused by Defendants' actions and that a judgement in favor of Plaintiff be entered;

696.

That Plaintiff recover for the wrongful death of Mr. Stoddard.

697.

That Plaintiff be awarded compensatory damages in an amount to be determined by the enlightened conscience of a jury;

698.

That Plaintiff be awarded punitive damages in an amount to be determined by the enlightened conscience of a jury;

699.

That Plaintiff recover her costs of this suit, including reasonable attorney's

fees and discretionary costs, as provided by law; and

<div align="center">700.</div>

That Plaintiff be awarded pre-judgment and post-judgment interest as permitted by common law or applicable statute and such other and further relief as may be just and proper.

*Respectfully submitted,*

*s/Corey B. Shipley*
Corey B. Shipley
BPR # TN 032772
Collins Shipley, PLLC
102 S. Main Street
Greeneville, TN 37743


*s/ Christopher Rogers*
Christopher Rogers
BPR # TN 035572
CDR Law


Of Counsel:

*s/ Eric J. Hertz*
Eric J. Hertz
BRP# GA 349501
8300 Dunwoody Place, Suite 210
Atlanta, GA 30350
Phone: (404) 577-8111
*Pro Hac Vice Forthcoming*